BEST PRICE PLUMBING, INC.,
Plaintiff-Respondent-Petitioner,

v.

ERIE INSURANCE EXCHANGE, Defendant-Appellant.

Supreme Court

*No. 10AP1474. Oral argument February 7, 2012.
—Decided May 3, 2012.*

2012 WI 44

(Also reported in 814 N.W.2d 419.)

For the plaintiff-respondent-petitioner there were briefs filed by *George W. Love* and *Love Law Offices, LLC*, Waukesha, and oral argument by *George W. Love*.

For the defendant-appellant there was a brief by *Elissa M. Bowlin, Brandon J. Robison* and *Jacobson Legal Group, S.C.*, Brookfield, and oral argument by *Elissa M. Bowlin*.

¶ 1. ANN WALSH BRADLEY, J. Best Price Plumbing, Inc., seeks review of an unpublished court of appeals decision that reversed an order entered by the circuit court and reinstated a jury verdict.[1] At trial, the jury found that a contract existed between Erie Insurance Exchange and Best Price, but that Erie did not breach the contract. The circuit court granted Best

---

[1] *Best Price Plumbing, Inc. v. Erie Ins. Exch.*, No. 2010AP1474, unpublished slip op. (Wis. Ct. App. Mar. 30, 2011), reversing an order of the circuit court for Waukesha County, Michael O. Bohren, Judge.

Price's motion after verdict to change the jury's answer. It concluded as a matter of law that a breach occurred, and it entered judgment in favor of Best Price.

¶ 2. Best Price argues that the court of appeals erred in reversing the circuit court. It asserts that under *State v. Kenosha Home Telephone Co.*, 158 Wis. 371, 148 N.W. 877 (1914), it was entitled to judgment as a matter of law.

¶ 3. The problem with Best Price's argument is that the *Kenosha Home Telephone* case was not raised at any time prior to or during the jury trial. Because the jury was not given any instruction about the *Kenosha Home Telephone* rule, the jury never applied that rule to the facts of this case, and it was not asked to answer any questions that would support the application of that rule as a matter of law. We conclude that any error in the jury instructions has been forfeited, and that we should evaluate the evidence in the context of the instructions that were given to the jury.

¶ 4. We further determine that there was sufficient evidence to support the jury's verdict and the circuit court was clearly wrong when it changed that answer to the verdict question. Accordingly, we affirm the court of appeals.

I

¶ 5. Although several important facts in this case are disputed, the parties agree on many of the events that preceded this lawsuit. Willtrim Group, LLC, owned rental property that sustained damage as a result of frozen pipes. Trevor Trimble, a member of Willtrim Group, contacted its insurer, Erie Insurance Exchange, and Erie agreed that the damage was covered under the

policy. Trimble called Best Price Plumbing to repair the property damage because Trimble's partner had hired Best Price in the past.

¶ 6.  Upon receiving Trimble's call, Darryl Michlig, who was employed by Best Price, met with Trimble to examine the property. Trimble called Erie's property adjuster and then handed the phone to Michlig. The property adjuster told Michlig that Erie would be paying for the repairs. Best Price sent a proposal to Erie's office on February 5, 2008. Erie never signed or returned the proposal. Representatives of Erie and Best Price testified that they did not specifically discuss mode of payment.

¶ 7.  Best Price performed the repair work, and it sent Erie's adjuster an invoice for $8,997. The adjuster authorized payment in the amount set forth in the invoice. He issued a two-party check payable to Willt-rim Group, LLC and Best Price Plumbing, Incorporated, and he mailed the check to Willtrim's address. The adjuster later testified that it comports with Erie's practice and insurance industry standards to issue a two-party check in such a situation.

¶ 8.  It is undisputed that the check, which bore two handwritten endorsements (one signed "Willtrim LLC" and the other signed "Best Price Plumbing"), was ultimately deposited into Willtrim's account. However, the parties disagree about what happened to the check after it was mailed and whether Best Price ever endorsed it.

¶ 9.  Trimble testified that he gave the check to a handyman by the name of Abdul, and he instructed Abdul to get an endorsement from a Best Price employee. He testified that "[i]t would have either been Darryl or Paul" who endorsed the check with the name "Best Price Plumbing." He explained that two Best

Price employees, Darryl and Paul, were at the work site, and Abdul did not need to go anywhere to get the signature. Three Best Price principals testified that no one from Best Price ever endorsed the check.

¶ 10. The parties agree that Willtrim never forwarded any funds to Best Price and that Best Price never received payment for its services. Best Price filed suit against Erie, alleging a breach of contract. Erie defended the suit on the basis that there was no contract between Erie and Best Price, and, even if there were a contract, Erie satisfied its obligations to Best Price by sending the two-party check to its insured. The lawsuit proceeded to trial.

¶ 11. Best Price submitted a proposed special verdict with two questions. First, Best Price's proposed verdict asked whether there was a contract. Second, it asked whether Erie breached the "duty of good faith in performing its contract" with Best Price.

¶ 12. The court reviewed the submissions and modified the special verdict questions to read as follows:

1. Did Erie Insurance Exchange enter into a contract with Best Price Plumbing, Inc.?

2. If you have answered Question No. 1 yes, then, and only then, answer this question. Did the defendant Erie Insurance Exchange, breach its contract with Best Price Plumbing, Inc.?

¶ 13. During the jury instruction and special verdict conference, the court explained that it had shared the proposed verdict with the parties and that Best Price had no objection to the form of the verdict as modified by the court: "We have been discussing the jury verdict. The proposed verdict was shown to the parties. The plaintiff is satisfied with it."

¶ 14.   The court moved on to address Erie's objection to the proposed verdict. Erie requested that, in addition to asking the jury whether it had breached the contract, the jury also be asked whether Erie substantially performed by mailing the two-party check to its insured. The circuit court disagreed, concluding that a question about substantial performance would "cloud[] the issue."

¶ 15.   The court explained that, based upon its understanding of the legal arguments advanced by the parties, an additional verdict question was unnecessary. It indicated that if the jury determined that Erie satisfied its contractual obligations by mailing the two-party check to Willtrim, it would find that there was no breach: "If the jury concludes that [Erie] could have given [the two-party check] to Trimble, then you have won the case. Then there is not a breach. I just don't see the—I don't see the application of substantial performance."

¶ 16.   The court then confirmed that Best Price had no objection to the special verdict:

> So I would leave the verdict stand as I drafted it with, 'Was there a contract, yes or no? Was it breached, yes or no[?]' . . .
>
> If [Best Price does not] prevail on one [and] two, they get nothing. That's how I read the case.

The court inquired whether Best Price's attorney had "any disagreement with that," and he answered, "None."

¶ 17.   With the special verdict behind them, the court and both parties turned to discussing the jury instructions. Neither party lodged any objection to the jury instructions proposed by the court.

¶ 18.   Regarding the applicable contract law, the court instructed the jury on agreement, offer, accep-

tance, consideration, definiteness and certainty, and implied contracts.[2] After the instructions were given, both parties agreed that they were complete and did not vary from the instructions agreed upon at the instruction and verdict conference.

¶ 19. During closing arguments, both parties primarily focused on the first question, the existence of a contract between Erie and Best Price. Regarding the second question, breach of that contract, Best Price's attorney argued: "The problem is [Erie] never delivered the check. Now, if the check is written and thrown on the street or put in Mr. Trimble's hands, but it never reaches Best Price Plumbing, then there has been no payment made because there has been no delivery." He

---

[2] In relevant part, the court instructed the jury as follows:

. . . If it is apparent that the parties intended to enter into a contract and that the conduct of the parties in the surrounding circumstances will reasonably permit omitted terms to be inferred, the contract is not indefinite. But where the parties have indicated an intention that leaves some essential matter to be agreed upon in the future, no provision as to that matter omitted can be inferred. For the jury may neither write nor rewrite an agreement between the parties nor supply any essential term.

Where the parties disagree in their recollection concerning the provisions of an oral contract, the jury must decide what the provisions were.

An agreement may be established by the conduct of the parties without any words being expressed in writing or orally if from such conduct, it can fairly be inferred that the parties mutually intended to agree on all of the terms.

This type of agreement is known as an implied contract. An implied contract may rest partially on the words expressed in connection with conduct or solely upon conduct.

A party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform. Failing to perform the duty under the contract includes defectively performing, as well as not performing at all.

argued that Erie breached its contract with Best Price "not because they were evil but because delivery was not made and they still have not made delivery of the money."

¶ 20. The jury returned a verdict in favor of Erie. With one juror dissenting, it found that there was a contract between Best Price and Erie, and therefore, it answered the first question "yes." However, it also found that Erie did not breach the contract. Therefore, the jury answered the second question "no."

¶ 21. Best Price filed a motion after verdict under Wis. Stat. § 805.14(5)(c) (2009–10)[3] and asked that the circuit court change the answer to the second question from "no" to "yes." It listed five grounds for relief. Of these five grounds, none had been previously raised.[4]

¶ 22. During the hearing on Best Price's motion, much of the argument revolved around a common law rule set forth in *State v. Kenosha Home Telephone Co.*, 158 Wis. 371, 148 N.W. 877 (1914).[5] Under that case,

---

[3] Wisconsin Stat. § 805.14(5)(c), entitled "[m]otion to change answer," provides: "Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer."

All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[4] Best Price argued that it was entitled to judgment because (1) a common law rule provides that place of payment must be at the place of business of the contractor; (2) payment by check is conditional on the check clearing the bank; (3) a demand performance is indispensable to Erie's right of action for breach of contract by Best Price; (4) Erie failed to plead that it had paid the contract; (5) Erie failed to plead defective performance by Best Price.

[5] In its motion, Best Price did not cite to *State v. Kenosha Home Telephone Co.*, 158 Wis. 371, 148 N.W. 877 (1914). Rather,

"[w]here a contract for the payment of money is silent as to the place of payment, in the absence of any legitimate inferences to the contrary the law implies that payment shall be made at the residence, office, or place of business of the creditor, if within the state." *Id.* at 374. Best Price argued that Erie's failure to send the check to its place of business constituted a breach of contract as a matter of law.

¶ 23. The circuit court appeared to struggle to reconcile Best Price's motion regarding the sufficiency of evidence with the fact that Best Price's new theory regarding breach of contract was not raised or argued at trial. It indicated that, "depending how one looks at the evidence, the court could make the finding that there was some credible evidence to support the jury verdict" that Erie did not breach the contract.

¶ 24. However, the court resolved the dilemma by concluding that Best Price's motion could be construed as a motion for judgment notwithstanding the verdict under Wis. Stat. § 805.14(5)(b).[6] It tacitly acknowledged that it was difficult to ascertain from the jury

---

it cited *State ex rel. Gurney Lumber Co. v. Risjord,* 161 Wis. 118, 152 N.W. 847 (1915) and *State ex rel. Flambeau River Lumber Co. v. Reid,* 206 Wis. 478, 240 N.W. 149 (1932). In ruling on Best Price's motion, the circuit court also discussed *State ex rel. Hartwig's Poultry Farm, Inc. v. Bunde,* 44 Wis. 2d 229, 170 N.W.2d 734 (1969). The rule set forth in these cases is directly derived from *Kenosha Home Telephone.* For the sake of consistency, we will refer to this rule as the *Kenosha Home Telephone* rule throughout this opinion.

[6] Wisconsin Stat. § 805.14(5)(b) provides: "A party against whom a verdict has been rendered may move the court for judgment notwithstanding the verdict in the event that the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment." Wisconsin Stat. § 805.14(2)(b) allows a

verdict what terms the jury thought were contained in the contract.[7] Nevertheless, the court concluded that the contract was silent on the place of payment.

¶ 25. The court reasoned that Erie had made two separate contracts—one with its insured and one with Best Price. It addressed the testimony of Erie's property adjuster that Erie's customary practice is to send a two-party check. However, it concluded that the adjuster's testimony "relates to the contract between . . . Erie and the insured, it doesn't relate to the contract between Erie and Best Price Plumbing. That being the case then the testimony is silent as to where payment was to be made." It applied the default rule from *Kenosha Home Telephone,* concluded that Erie had breached the contract, and changed the jury's answer to the second question.

¶ 26. The court of appeals reversed. *Best Price Plumbing, Inc. v. Erie Insurance Exchange,* No. 2010AP1474, unpublished slip op. (Wis. Ct. App. Mar. 30, 2011). It reasoned that "[t]he jury was charged with resolving the conflict in the testimony about how Best Price was to be paid and how Best Price's endorsement came to be on the check." *Id.,* ¶ 9. After reviewing the evidence, the court of appeals determined that "there was credible evidence to support the jury's verdict that Erie did not breach its contract with Best Price," and therefore, "the circuit court was clearly wrong when it changed the jury's answer." *Id.,* ¶ 10.

court to treat a mistakenly designated motion after verdict as if there had been a proper designation.

[7] The circuit court asked, "So what was the contact and what did [the jury] find"? It appeared to settle upon the terms in Best Price's written proposal: "[The jury] certainly had [as] one of the trial exhibits . . . the proposal . . . ."

¶ 27.   We accepted Best Price's petition for review. Given the difference between the approaches taken by the circuit court and the court of appeals, we also directed the parties to address whether this case presents a question of fact or law.

## II

¶ 28.   The most challenging question in this case is the proper standard of review. Best Price asserts that this case can be decided as a matter of law. By contrast, Erie argues that this case presents questions of fact. It contends that the circuit court was clearly wrong to change the jury's answer to the special verdict question because there was credible evidence to support it.

¶ 29.   The disconnect about the proper standard of review in this case is illustrated by the different approaches taken by the circuit court and the court of appeals. The circuit court acknowledged that there was sufficient evidence to support the jury verdict. Nevertheless, it determined that the jury's answer must be changed based upon the default rule from *Kenosha Home Telephone,* 158 Wis. 371. On the other hand, the court of appeals treated this case as presenting a typical question of sufficiency of evidence. Because it determined that there was conflicting evidence and some of the evidence supported a finding that Erie did not breach the contract, it upheld the jury's verdict.

██

¶ 30.   If we conclude that this case presents a question of law, then we will review it independently of the determinations rendered by the circuit court and the court of appeals. However, if we determine that this case presents a question of fact, then it is a jury question, and we review it under the established framework for reviewing a circuit court's decision on a motion after verdict based on the sufficiency of the evidence. A

circuit court's decision to change the jury's answer is "clearly wrong" if the jury verdict is supported by "any credible evidence." *Weiss v. United Fire & Cas. Co.,* 197 Wis. 2d 365, 541 N.W.2d 753 (1995).

## III

¶ 31.   The uncertainty about the proper standard of review arises as a result of the way that this case was presented in the circuit court. Best Price asserts that it is entitled to judgment as a matter of law under *Kenosha Home Telephone,* 158 Wis. 371. However, Best Price's argument about that case was not raised at any time prior to or during the jury trial, and it was not reflected in the jury instructions and special verdict. It was only after the jury returned an unfavorable verdict that Best Price first cited to the rule set forth in *Kenosha Home Telephone* and argued that it was entitled to judgment as a matter of law.

¶ 32.   In that case, the parties entered into a written contract for telephone services. *Id.* at 372. The contract provided for cancellation upon nonpayment, but it was silent as to the place of payment. *Id.* The customer, whose payment was delinquent, called the manager of the telephone company to his office and attempted to pay the overdue account. *Id.* at 373. The manager refused to accept the payment because he had been instructed to receive payments at the telephone company offices, only. *Id.* Ultimately, the telephone company cancelled the service, and the customer filed suit. *Id.*

¶ 33.   The *Kenosha Home Telephone* court concluded that the telephone company was within its right to refuse payment when offered outside the telephone

319

company's office, and therefore, it was the customer (and not the telephone company) that had breached the contract. In making this determination, the court set forth the following common law rule: When a contract for the payment of money is silent as to the place of payment, the law implies that payment shall be made at the place of business of the creditor, in the absence of any legitimate inferences to the contrary.[8] *Id.* at 374.

¶ 34. Best Price now asserts that the contract was silent about place of payment and Erie did not deliver the check to Best Price's place of business. Accordingly, it contends that under the *Kenosha Home Telephone* rule, Erie breached the contract as a matter of law.

¶ 35. However, the jury was never instructed about the *Kenosha Home Telephone* rule of law. Additionally, the jury was not asked to answer any questions that would support the application of the *Kenosha Home Telephone* rule as a matter of law.

¶ 36. It is unknown what the jury would have done had it been instructed about this rule. A properly in-

---

[8] The *Kenosha Home Telephone* rule has been repeated several times in the context of determining venue for a breach of contract case. *See Gurney Lumber Co.,* 161 Wis. 118; *Flambeau River Lumber Co.,* 206 Wis. 478; *Hartwig's Poultry Farm,* 44 Wis. 2d 229.

In all three cases, the court was called upon to determine whether the cause of action or some part thereof arose in the county in which the payee's place of business was located. *See* Wis. Stat. § 801.50. In these cases, one party argued that a lawsuit should have been venued in the county where the contract was made because that was the county in which the plaintiff's contact rights arose. The other party argued that venue was proper in the county where the plaintiff's place of business was located because that was the county where payment was to be made and where the plaintiff's contract rights were violated.

structed jury might have concluded that Erie breached the contract by failing to deliver payment to Best Price's "place of business." In the alternative, it might have concluded that under the rule, there were "legitimate inferences to the contrary."[9] Because the jury was never asked to apply the *Kenosha Home Telephone* rule to the facts of this case, we cannot know how a properly instructed jury would have answered the special verdict question asking whether Erie breached the contract.[10]

[9] It should be noted that during the circuit court's oral ruling on the motion after verdict, the court's recitation of the *Kenosha Home Telephone* rule was incomplete. The circuit court set forth the rule as follows: "The contract being silent as to the place of payment, the place of payment is at the residence of the seller. . . . That's the statement of the law." The court's recitation of the rule omitted the caveat: "in the absence of any legitimate inferences to the contrary." Because the circuit court did not consider the rule in its entirety, it did not consider whether a jury could have made "any legitimate inference" that the default rule of *Kenosha Home Telephone* was inapplicable.

[10] In the order accepting the petition for review, we asked the parties to address the following question: Where a contract is silent as to the place of payment, is the question of whether a payee under a contract must make a direct pay request a question of fact or law? After reviewing the parties' submissions and the facts of this case, we conclude that the question is better phrased as follows: Where a contract is silent as to the place of payment, is the question of whether payment must be made at the payee's place of business a question of law or fact?

As our analysis demonstrates, the answer to this question is, "it depends." Whether there are "any legitimate inferences" that payment is to be made at a place other than the payee's place of business is a question of fact for the jury. However, when a contract is silent regarding place of payment and there is no evidence that would support a "legitimate inference to the contrary," the *Kenosha Home Telephone* rule can be applied as a matter of law.

321

¶ 37. These omissions occurred, in part, because Best Price did not request a special instruction about the *Kenosha Home Telephone* rule and did not object to the jury instructions and special verdict that were given to the jury. In such a case, if the instructions were erroneous, any error in the instruction is forfeited under Wisconsin statutes and case law.[11]

¶ 38. Wisconsin Stat. § 805.13(3), which discusses the instruction and verdict conference, provides: ". . . Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."

¶ 39. In *State v. Shah,* 134 Wis. 2d 246, 251 n.4, 397 N.W.2d 492 (1986), this court interpreted the statute as follows: "even when an instruction misstates the law, the party must object to the instruction to preserve a challenge to the instruction as of right on appeal. Failure to object to an instruction constitutes a waiver of the error." *See also Tammy W-G. v. Jacob T.,* 2011 WI 30, ¶ 72, 333 Wis. 2d 273, 797 N.W.2d 854; *D.L. Anderson's Lakeside Leisure Co. v. Anderson,* 2008 WI 126, ¶ 39, 314 Wis. 2d 560, 757 N.W.2d 803; *State v.*

---

[11] In *State v. Ndina,* 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612, this court recognized that the terms "forfeiture" and "waiver" are often used interchangeably, but that the terms embody distinct legal concepts. Forfeiture is the failure to make the timely assertion of a right, and waiver is the intentional relinquishment of a known right. In the context of the failure to object to a jury instruction, the applicable concept is forfeiture. Therefore, even though Wis. Stat. § 805.13(3) and some of the cases that interpret that statute refer to this concept as waiver, we use the term forfeiture throughout the opinion.

*Schumacher,* 144 Wis. 2d 388, 409, 424 N.W.2d 672 (1988); *Air Wis., Inc. v. N. Cent. Airlines, Inc.,* 98 Wis. 2d 301, 315–16, 296 N.W.2d 749 (1980).

¶ 40. The court of appeals was presented with a similar situation in *Kovalic v. DEC International, Inc.,* 161 Wis. 2d 863, 873 n.7, 469 N.W.2d 224 (Ct. App. 1991). In that case, the jury instruction was misleading, but the defendant failed to object to the misleading instruction. *Id.* When it later moved to change the jury's answer, the court of appeals concluded that the defendant had waived the objection to the misleading instruction. It stated: "Such a motion challenges the sufficiency of the evidence to sustain the answer . . . and it must be considered in the context of the instructions given to the jury." *Id.*

¶ 41. Wisconsin Stat. § 805.13(3) and the above cited cases represent the policy that parties should marshal the relevant facts and law prior to trial. A party is not permitted to save its legal arguments until after trial, only to present those arguments if the party dislikes the jury's ultimate conclusion. "[I]f attorneys are not required to raise issues at the trial court level, there is less of an incentive for attorneys to diligently prepare their cases for trial . . . [and] it may result in hardship to one of the parties." *Vollmer v. Luety,* 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990). Accordingly, because there was no objection, we conclude that any error in the jury instructions has been forfeited.

IV

¶ 42. Because Best Price forfeited any objection to the jury instruction, we evaluate the evidence in the context of the instructions that were given to the jury.

323

*Kovalic,* 161 Wis. 2d at 873 n.7. Best Price's motion asked the circuit court "to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer." Wis. Stat. § 805.14(5)(c).[12] The standard that a circuit court must apply when considering such a motion and the standard that an appellate court must apply on review are both well established.

¶ 43. The circuit court is guided by the proposition that "the credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment." *Richards v. Mendivil,* 200 Wis. 2d 665, 671, 548 N.W.2d 85 (Ct. App. 1996). "[W]here more than one inference can be drawn from the evidence," the circuit

_____

[12] We respectfully disagree with both the circuit court and the dissent that Best Price's motion to change the jury's answer is more appropriately designated as a motion for judgment notwithstanding the verdict. Such a motion "accepts the findings of the verdict as true but contends that the moving party should have judgment for reasons evident in the record other than those decided by the jury." *Hicks v. Nunnery,* 2002 WI App 87, ¶ 15, 253 Wis. 2d 721, 643 N.W.2d 809.

Here, the special verdict asked whether Erie breached the contract, and the jury answered that question "no." Best Price's motion asked the court to change the answer from "no" to "yes." By definition, Best Price's motion was not a motion for judgment notwithstanding the verdict because it did not accept the finding of the verdict as true. Instead, it asked the court to answer "yes," indicating that Erie did breach the contract, despite the jury's determination that there was no breach.

If granting judgment notwithstanding the verdict were appropriate in a situation like this, such a motion could be raised whenever a party fails to request an appropriate jury instruction. Such a practice would undermine the policy underlying Wis. Stat. § 805.13(3) that parties should marshal the relevant law prior to trial.

court "must accept the inference drawn by the jury." *Id.* The circuit court "must view the evidence in the light most favorable to the verdict and affirm the verdict if it is supported by any credible evidence." *Id.*

¶ 44.   In reviewing the circuit court's decision to grant such a motion, an appellate court will search for credible evidence to sustain the jury's verdict. *Weiss,* 197 Wis. 2d at 398. The appellate court will overturn the circuit court's decision if the circuit court was "clearly wrong." *Id.* at 389. A circuit court's decision to change the jury's answer is "clearly wrong" if the jury verdict is supported by "any credible evidence." *Id.* "When there is *any* credible evidence to support a jury's verdict, even though it [is] contradicted and the contradictory evidence [is] stronger and more convincing, nevertheless the verdict must stand." *Id.* at 389–90 (emphasis in original).

¶ 45.   Having set forth the standards that guide our determination, we turn to the facts of this case. Here, the jury was instructed that it "may neither write nor rewrite an agreement between the parties nor supply any essential term," but that "[a]n agreement may be established by the conduct of the parties without any words being expressed . . . if from such conduct, it can fairly be inferred that the parties mutually intended to agree on all of the terms." Additionally, the jury was instructed that "[a] party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform."

¶ 46.   After receiving these instructions, the jury found that Erie did not breach its contract with Best Price. At the outset, it must be acknowledged that the jury verdict provides little insight on how, precisely, the

jury arrived at this finding because the jury was not asked to find the terms of the contract. However, we are guided by the observation made by the circuit court prior to trial: "If the jury concludes that [Erie] could have given [the two-party check] to Trimble, then . . . there is not a breach."

¶ 47. We agree with the circuit court's observation. If the jury found that the parties' agreement was silent on the method of payment and it heeded the court's instruction that it could not rewrite the contract to supply the term, the jury could have found that delivering the two-party check to Trimble satisfied Erie's contractual obligations.

¶ 48. Alternatively, the jury could have relied on evidence of the parties' conduct and Best Price's closing arguments when it found that there was no breach. The jury could have inferred from the parties' conduct that they mutually agreed that Erie's payment could be made by delivering a two-party check to its insured.

¶ 49. The jury was instructed that "[a]n agreement may be established by the conduct of the parties without any words being expressed . . . if from such conduct, it can fairly be inferred that the parties mutually intended to agree on all of the terms." During closing arguments, Best Price asserted that Erie had breached the contract because it "never delivered the check." Likewise, during oral argument in this court, Best Price argued, "If the check never falls into the hands of Best Price Plumbing, there is no payment."

¶ 50. In this case, contrary to Best Price's closing argument, there was evidence that the check did "fall[] into the hands of Best Price Plumbing." Specifically, the jury was presented with a copy of the check, which bore a handwritten endorsement from Best Price. Additionally, the jury heard testimony from Trimble that he had

given the check to his handyman, Abdul, and asked him to get Best Price's endorsement. Trimble testified that Abdul was not required to leave the work site to get the endorsement because two Best Price employees, Darryl and Paul, were on site. Trimble testified that he believed that Best Price's endorsement was made by either Darryl or Paul.

¶ 51. In its review, the court of appeals noted that there was a "conflict in the testimony about how Best Price was to be paid and how Best Price's endorsement came to be on the check." *Best Price Plumbing,* unpublished slip op., ¶ 9. In its argument to this court, Best Price's attorney likewise acknowledged that there was "conflicting testimony" regarding whether Best Price received and endorsed the check.[13]

¶ 52. We are required to search the record for evidence to sustain the verdict, and we must view the evidence in the light most favorable to the verdict. We will affirm the verdict if it is supported by any credible evidence. *Weiss,* 197 Wis. 2d at 389–90. Here, the verdict is supported by the endorsement on the check and Trimble's testimony.

¶ 53. Nevertheless, Best Price argues that Trimble's testimony and the evidence of Best Price's signature is "patently incredible." We recognize that Trimble's credibility was called into question during the

---

[13] Best Price's attorney explained: "Well, there was conflicting testimony. Best Price's three principals denied the signature, and Mr. Trimble testified that he gave the check to a certain handyman by the name of Abdul who was instructed to go to the job site two weeks after my client had finished the job and get a signature and return with the signature. So, this was hotly contested as to whose signature this was."

course of the trial.[14] However, questions about the weight and credibility of evidence are reserved for the trier of fact. *Richards,* 200 Wis. 2d at 671. We cannot say as a matter of law that Trimble's testimony could not be believed.[15]

¶ 54.    Best Price introduced the endorsed check into evidence, and the jury was entitled to draw its own inferences from the signature on the check and Trimble's testimony. Given the conflicting testimony about the endorsement on the check, "more than one inference can be drawn from the evidence." *Id.* The jury could have found that Best Price endorsed the check, and it could have inferred from this conduct that the parties mutually agreed that Erie's payment could be made by delivering the two-party check to its insured.

---

[14] According to notes made by Erie's adjuster, when Trimble was initially questioned about the payment to Best Price, he made no mention of Abdul. He explained that his secretary, Chandra, signed some checks and took some money from Willtrim. Trimble told Erie's adjuster that he would "track down his secretary who he has been unable to reach."

[15] Additionally, Best Price contends that the evidence is entitled to no weight because Erie failed to establish the authenticity of Best Price's signature under Wis. Stat. § 909.015. It contends that Trimble forged Best Price's signature, and "conversion of insurance proceeds through a forgery" is "a matter not lightly to be upheld." We agree that conversion of insurance proceeds through forgery is a matter not to be taken lightly by a court. However, the central issue in this case is whether Erie breached the contract, and Best Price had the burden of proof on this issue. By shifting the focus to the standards for authenticating signatures, Best Price attempts to shift the burden of proof to Erie. If Best Price wishes to try the issue of the authenticity of the endorsement, it should file suit against Trimble, the party that allegedly forged the endorsement and converted the insurance proceeds.

¶ 55. In the context of the instructions given to the jury, we determine that there was some credible evidence to support the jury's verdict. Accordingly, the circuit court was clearly wrong when it changed the answer to the verdict question.

¶ 56. Before concluding, we pause briefly to make the following observation. Even if the jury had been instructed about the default rule from *Kenosha Home Telephone,* it could have relied on evidence discussed above to reach the same verdict. A properly instructed jury could have relied on the endorsed check and Trimble's testimony to make the "legitimate inference" that the default rule was inapplicable.

¶ 57. If the jury had been given an instruction about *Kenosha Home Telephone,* it would have been told that the rule applies when the contract is silent about place of payment, "in the absence of any legitimate inferences to the contrary." 158 Wis. at 374. Additionally, as noted above, the jury was instructed that "[a]n agreement may be established by the conduct of the parties . . . if from such conduct, it can fairly be inferred that the parties mutually intended to agree on all of the terms."

¶ 58. A properly instructed jury could have relied on the endorsed check and Trimble's testimony to find that Best Price accepted payment at the job site. From that conduct, it could have made a "legitimate inference" that Best Price and Erie must have agreed to a place of payment other than Best Price's "place of business." Under those circumstances, the jury could have concluded that Erie did not breach the contract.

V

¶ 59. In sum, the problem with Best Price's argument about *Kenosha Home Telephone* is that the case

329

was not raised at any time prior to or during the jury trial. Because the jury was not given any instruction about the *Kenosha Home Telephone* rule, the jury never applied that rule to the facts of this case, and it was not asked to answer any questions that would support the application of that rule as a matter of law. We conclude that any error in the jury instructions has been forfeited, and that we should evaluate the evidence in the context of the instructions that were given to the jury.

¶ 60. We further determine that there was sufficient evidence to support the jury's verdict and the circuit court was clearly wrong when it changed that answer to the verdict question. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 61. ANNETTE KINGSLAND ZIEGLER, J. (*dissenting*). I dissent from the majority opinion which concludes that the circuit court was clearly wrong when it changed the answer in the verdict because there was credible evidence to support the jury's finding that Erie Insurance Exchange (Erie) did not breach its contract with Best Price Plumbing, Inc. (Best Price). *See* majority op., ¶ 4. Despite acknowledging that the circuit court treated Best Price's motion after verdict as a motion for judgment notwithstanding the verdict (JNOV), *id.*, ¶ 24, a motion that does *not* challenge the sufficiency of the evidence,[1] the majority nevertheless

---

[1] As the majority notes, *see* majority op., ¶ 24 n.6, when a party mistakenly designates a motion for JNOV as a motion to change an answer in the verdict, "the court shall treat the motion as if there had been a proper designation." Wis. Stat. § 805.14(2)(b). In this case, Best Price designated its motion after verdict as a motion to change an answer in the verdict.

reviews Best Price's motion as a motion to change an answer in the verdict and searches the record for any credible evidence to support the verdict, *see id.,* ¶¶ 42–52. Because the circuit court treated Best Price's motion as a motion for JNOV, the majority should apply the standard of review applicable to a circuit court's decision to enter JNOV—de novo. The majority errs by not applying the appropriate standard of review. Had the majority appropriately reviewed de novo the circuit court's decision, it would have concluded, as I do, that Best Price was entitled to judgment as a matter of law.

¶ 62.   Pursuant to Wis. Stat. § 805.14(5)(b), "[a] party against whom a verdict has been rendered may move the court for judgment notwithstanding the verdict in the event that the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment." As § 805.14(5)(b) makes clear, a motion for JNOV does not challenge the sufficiency of the evidence to support the jury's findings. *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 206 Wis. 2d 158, 176, 557 N.W.2d 67 (1996). Rather, a motion for JNOV assumes *arguendo* that the verdict is proper but nevertheless asserts that judgment should be granted to the moving party on grounds other than those decided by the jury. *Id.* at 177; *Herro v. DNR,* 67 Wis. 2d 407, 413,

However, evident by Best Price's argument at the motion hearing, it is clear that Best Price's motion was more appropriately designated a motion for JNOV. Best Price completed its argument by requesting the circuit court to change the jury's answer to the second question "as a matter of law, and on the undisputable facts of this case." Unlike a motion for JNOV, a motion to change an answer in the verdict does not accept as true all facts before the jury. *Compare* § 805.14(5)(b), *with* § 805.14(5)(c).

277 N.W.2d 456 (1975); *see also Wozniak v. Local 1111 of the United Elec., Radio & Mach. Workers of Am.,* 57 Wis. 2d 725, 733, 205 N.W.2d 369 (1973) (explaining that a motion for JNOV is effectively a post-verdict motion for directed verdict). In other words, a motion for JNOV "raises only questions of law and admits all facts supporting the jury's verdict. It is, in a sense, a demurrer to the evidence." *State v. Escobedo,* 44 Wis. 2d 85, 90–91, 170 N.W.2d 709 (1969). Because a motion for JNOV presents a question of law, this court reviews de novo a circuit court's decision on a motion for JNOV. *Danner v. Auto-Owners Ins.,* 2001 WI 90, ¶ 41, 245 Wis. 2d 49, 629 N.W.2d 159; *Mgmt. Computer Servs.,* 206 Wis. 2d at 177.

¶ 63. In this case, accepting as true all facts supporting the jury's verdict, I conclude that Best Price was entitled to judgment as a matter of law. It is undisputed that the contract between Erie and Best Price was silent as to the place of payment. "Where a contract for the payment of money is silent as to the place of payment, in the absence of any legitimate inferences to the contrary, the law implies that payment shall be made at the residence, office, or place of business of the creditor, if within the state." *State v. Kenosha Home Tel. Co.,* 158 Wis. 371, 374, 148 N.W. 877 (1914). Here, there is no question that Best Price performed and that payment was not made at Best Price's place of business. Consequently, as a matter of law, a reasonable jury could not find that Erie did not breach its contract with Best Price. On that very basis, the circuit court noted that, had it been asked, it would have directed a verdict in Best Price's favor.

¶ 64. The majority acknowledges that the jury was not instructed on the above rule of law, majority op., ¶ 35, but concludes that Best Price forfeited any

error in the jury instructions by not objecting to them, *id.,* ¶ 37. Nevertheless, assuming for the sake of argument that the jury was properly instructed, the majority posits that a reasonable jury still could have found that Erie did not breach its contract with Best Price because a reasonable jury could have legitimately inferred that Erie and Best Price agreed to a place of payment other than Best Price's place of business. *Id.,* ¶ 58. I disagree.

¶ 65.   In support of its position, the majority relies on the testimony of Trevor Trimble (Trimble), an employee of Erie's insured, and the two-party check purportedly endorsed by Best Price. *Id.* In relevant part, Trimble's testimony consisted of the following: Trimble instructed a "handy man" by the name of Abdul, presumably an associate of Trimble's, to get a Best Price employee to endorse the check; Abdul did not have to leave the work site to get the signature; and "either Darryl or Paul," both of whom were Best Price employees present at the work site, endorsed the check on behalf of Best Price. Notably, Trimble had no personal knowledge of any Best Price employee endorsing the check, and neither Abdul, Darryl, nor Paul—the three men who might have had such personal knowledge—testified. What is more, three Best Price principals testified that no one from Best Price ever endorsed the check, and it is undisputed that Best Price was never actually paid. Thus, according to the majority's logic, Trimble's uncorroborated, self-serving testimony somehow translates into evidence that Best Price accepted payment at the work site in lieu of its place of business. While a jury is entitled to draw inferences from the evidence, any inferences must be reasonable. The majority's leap in logic is not a reasonable inference for a jury to draw.

¶ 66.    For that same reason, even assuming, as the majority apparently does, that Best Price properly designated its motion after verdict as a motion to change an answer in the verdict, I would still conclude that there was insufficient evidence to sustain the jury's finding that Erie did not breach its contract with Best Price.

¶ 67.    In the end, Best Price is not the only one to lose as a result of the majority's decision. After today, similar small businesses all over the state should be wary of a client's mere word or handshake, lest their services will go unpaid for. In the future, they ought to get a signed contract requiring payment up-front.

¶ 68.    For the foregoing reasons, I respectfully dissent.

¶ 69.    I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this dissent.