COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1873**

2016CV567

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

ESTATE OF EMILLY ZHU BY SPECIAL ADMINISTRATOR
ZONGJIAN ZHU, ZONGJIAN ZHU AND WEIQIN JIANG,

   PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,

 V.

BRIAN J. HODGSON,

   DEFENDANT-APPELLANT-CROSS-RESPONDENT,

IDS PROPERTY CASUALTY INSURANCE COMPANY,

   DEFENDANT-CROSS-RESPONDENT.

---

APPEAL from a judgment and CROSS-APPEAL from a judgment and an order of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge. *Affirmed and cause remanded with directions.*

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

¶1 FITZPATRICK, P.J. Brian Hodgson struck Emilly Zhu with his vehicle while Zhu was on her bicycle crossing a road in a marked crosswalk. Zhu later died from injuries sustained in that collision. The Estate of Emilly Zhu and Zhu's parents, Zongjian Zhu and Weiqin Jiang,[1] brought this action against Hodgson and his insurer, IDS Property Casualty Insurance Company. A jury determined that Zhu was not negligent, but Hodgson was negligent and Hodgson's negligence caused the collision. The jury also awarded amounts for the injuries sustained. Judgment was entered against Hodgson in the amount of $5,481,471.24, and against IDS in the amount of $108,268.70.

¶2 Hodgson appeals the judgment against him and challenges a ruling of the circuit court regarding testimony of one of the Estate's expert witnesses and the circuit court's denial of his post-verdict motions. The Estate cross-appeals a post-verdict order of the circuit court and contends that the court erred in not making IDS jointly and severally liable for the total verdict amount. We affirm the judgment and order.

¶3 In addition, IDS argues that the Estate's cross-appeal of the circuit court's post-verdict order regarding the judgment against IDS is frivolous and asks this court for an award of attorney fees and costs. We agree that the Estate's cross-appeal of that order is frivolous and remand this matter to the circuit court for a determination of reasonable appellate attorney fees and costs.

**BACKGROUND**

¶4 The following material facts are undisputed.

---

[1] We will refer to the Estate of Emilly Zhu and Zhu's parents as "the Estate" unless the context requires otherwise.

¶5      In June 2015, Hodgson was driving westbound on Raymond Road in Madison. At approximately the same time, Zhu was riding her bicycle southbound on the Ice Age Trail near where that trail intersects with Raymond Road. As Zhu crossed Raymond Road within the bounds of a marked crosswalk, Hodgson's vehicle collided with Zhu. Zhu sustained multiple traumatic injuries in the accident and died two days later.

¶6      The Estate brought this action against Hodgson and IDS.[2] The case was tried before a jury for four days. The jury returned a special verdict in which the jury determined that Hodgson was negligent in the operation of his motor vehicle, and such negligence was a cause of the collision. The jury also determined that Zhu was not negligent in the operation of her bicycle. The jury awarded $10,000,000 to Zhu's parents for loss of society and companionship.[3] In addition, the jury awarded the Estate $5,000,000 for Zhu's conscious pain and suffering.

¶7      Germane to this appeal, Hodgson and IDS filed post-verdict motions requesting that the circuit court: change the jury's award of damages for Zhu's conscious pain and suffering to $0; change the jury's determination that Zhu was not negligent and conclude as a matter of law that Zhu was causally negligent or, in the alternative, grant a new trial on liability issues based on purported errors in jury instructions. Hodgson and IDS also requested that the circuit court reduce the

---

[2] The Estate also named as defendants Group Health Cooperative of South Central Wisconsin and Allstate Fire and Casualty Insurance Company, the Estate's underinsured motorist carrier. The Estate's claims against those defendants are not at issue in this appeal.

[3] The parties stipulated that the Estate's damages for Zhu's medical bills were $127,177.79, and that the Estate's damages for funeral expenses were $9,328.69.

3

jury's award for loss of society and companionship to the statutory maximum of $350,000. *See* WIS. STAT. § 895.04(4) and (7) (2017-18).[4]

¶8 The circuit court granted Hodgson's motion to reduce the jury's award for loss of society and companionship to the statutory maximum of $350,000 and denied each of Hodgson's other post-verdict motions. The circuit court entered judgment, including costs, against IDS in the amount of $108,268.70, and against Hodgson in the amount of $5,481,471.24.[5]

¶9 IDS tendered to the Estate full payment of the judgment rendered against it, but the Estate refused to sign a satisfaction of judgment based on that tender. IDS filed a motion in the circuit court requesting an order for satisfaction of judgment based on IDS's tender of the amount noted in the judgment. The circuit court granted IDS's request and entered an order that the judgment against IDS was fully satisfied. This appeal and cross-appeal followed.

¶10 Additional pertinent facts are set forth in our discussion below.

## DISCUSSION

¶11 Hodgson appeals the judgment against him. The Estate cross-appeals the judgment against IDS and the order for satisfaction of judgment entered by the circuit court. We address each in turn.

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[5] Excluding costs, the judgment against IDS was $100,000, an amount which (as we discuss later in this opinion) reflects the limits of Hodgson's automobile liability insurance policy, and the judgment against Hodgson was $5,386,506.48.

**I. Hodgson's Appeal.**

**A. Admissibility of Expert Testimony on Conscious Pain and Suffering.**

¶12    The Estate sought damages for conscious pain and suffering sustained by Zhu before and after the accident. *See generally **Schilling v. Chicago, N. Shore & Milwaukee R.R. Co.***, 245 Wis. 173, 177, 13 N.W.2d 594 (1944) (superseded by statute on other grounds) (stating that if decedent's death is caused by a wrongful or negligent act, the decedent's estate can recover for pain and suffering felt by the decedent during the period between the accident and death); WIS. STAT. § 895.04. Hodgson argues that opinion testimony from the Estate's expert that Zhu felt pain and suffering before and after the accident was inadmissible under WIS. STAT. § 907.02(1), and the circuit court erroneously exercised its discretion in admitting that expert testimony. We begin by setting forth additional pertinent facts.

*1. Additional Pertinent Facts.*

¶13    To support the claim that Zhu had conscious pain and suffering, the Estate relied in part upon the testimony of Dr. Randal F. Wojciehoski. We summarize here, and later, Dr. Wojciehoski's testimony at his discovery deposition and a hearing before the circuit court concerning Hodgson's request to bar the testimony of Dr. Wojciehoski under WIS. STAT. § 907.02(1).[6]

¶14    Dr. Wojciehoski is a physician board certified in internal and emergency medicine and is employed as an emergency physician at Saint Michael's Hospital-Ministry Health Care in Stevens Point, Wisconsin.

---

[6] That hearing took place, without the jury present, during the trial.

Dr. Wojciehoski has worked as a physician for over thirty years. He has testified previously three times regarding conscious pain and suffering, twice for plaintiffs and once for the defense. Dr. Wojciehoski has "seen approximately [100,000] patients" over the course of his career. He is also a senior aviation medical examiner for the Federal Aviation Administration.

¶15 Dr. Wojciehoski opined that "Zhu … experience[d] [suffering in the form of] pre-death fear and apprehension" before she was struck by Hodgson's vehicle. Dr. Wojciehoski also opined that after the collision Zhu experienced at least thirty seconds, and up to sixty seconds, "conscious pain and suffering prior to being rendered unconscious."

¶16 The circuit court determined that Dr. Wojciehoski was qualified to testify as an expert under WIS. STAT. § 907.02(1). The court summarized its ruling: "I am convinced that this medical doctor has the experience and the training for the limited opinions that he is going to express." The circuit court ruled that Dr. Wojciehoski's discovery deposition testimony could be read to the jury during trial as requested by the Estate. The transcript of Dr. Wojciehoski's deposition testimony was then read to the jury.

¶17 In a post-verdict motion, and on appeal, Hodgson asserts that Dr. Wojciehoski's testimony was not admissible in evidence and should not have been presented to the jury. Specifically, Hodgson asserted in his post-verdict motion that Dr. Wojciehoski's opinion on Zhu's conscious pain and suffering "lack[ed] … foundation" and was "speculative."

¶18    The circuit court denied Hodgson's post-verdict request for relief regarding Dr. Wojciehoski's testimony. Hodgson renews, on appeal, his challenge to the admissibility of Dr. Wojciehoski's testimony.[7]

## 2. Standard of Review and Governing Legal Principles.

¶19    We review a circuit court's decision to admit or exclude expert testimony under an erroneous exercise of discretion standard. *State v. Giese*, 2014 WI App 92, ¶16, 356 Wis. 2d 796, 854 N.W.2d 687. We first decide whether the circuit court applied the proper legal standard under WIS. STAT. § 907.02(1), and we make that determination independent of the circuit court analysis. *Seifert v. Balink*, 2017 WI 2, ¶89, 372 Wis. 2d 525, 888 N.W.2d 816; *id.*, ¶218 (Gableman, J., concurring).[8]    Once this court is satisfied that the circuit court applied the proper legal framework, we then review whether the circuit court properly exercised its discretion in its choice of relevant factors and its ultimate conclusion as to admissibility under § 907.02(1). *Id.*, ¶90; *id.*, ¶218 (Gableman, J., concurring).

¶20    "The admissibility of expert testimony is governed by WIS. STAT. § 907.02," which adopts "the *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*,

---

[7] Post-trial, the circuit court commented that it "probably should have excluded the expert opinion of Dr. [Wojciehoski]." However, the circuit court concluded that the admission of Dr. Wojciehoski's testimony was harmless because, even without Dr. Wojciehoski's testimony, there was sufficient evidence from which the jury could infer Zhu suffered pre-accident suffering and post-accident pain and suffering. Although Hodgson notes in briefing in this court the circuit court's post-verdict comment about admissibility of Dr. Wojciehoski's testimony, Hodgson does not rely on that comment as a separate basis to support his argument about the inadmissibility of that testimony.

[8] Hodgson does not argue that the circuit court used an improper legal standard in determining the admissibility of Dr. Wojciehoski's testimony. The circuit court recognized and incorporated the standards enunciated in *Seifert v. Balink*, 2017 WI 2, 218, 372 Wis. 2d 525, 888 N.W.2d 816, in its decision regarding the admissibility of Dr. Wojciehoski's testimony.

509 U.S. 579 (1993)] reliability standard embodied in Federal Rule of Evidence 702." *Giese*, 356 Wis. 2d 796, ¶17 (quoted source omitted); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999). Section 907.02(1) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

¶21   Under WIS. STAT. § 907.02(1), the circuit court functions as a "gate-keeper … to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." *Giese*, 356 Wis. 2d 796, ¶18 (citing *Daubert*, 509 U.S. at 589 n.7).  In determining the admissibility of expert testimony, the question before the court is "whether the … principles and methods that the expert relies upon have a reliable foundation 'in the knowledge and experience of [the expert's] discipline.'" *Id.* (quoting *Daubert*, 509 U.S. at 592).  The focus of the court is on the principles and methodology the expert relies upon, not on the expert's conclusion. *Id.*

¶22   Factors identified in *Daubert* "do *not* constitute a 'definitive checklist or test.'" *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593); s*ee also Seifert*, 372 Wis. 2d 525, ¶64; *Seifert*, 372 Wis. 2d 525, ¶236 (Gableman, J., concurring).  Ultimately, the inquiry is a "flexible one" with the goal being to test the reliability of the proposed expert testimony. *See Seifert*, 372 Wis. 2d 525, ¶64; *id.*, ¶236 (Gableman, J., concurring).  An expert's testimony

may be reliable based on the experience of the expert, including relevant medical experience. *See id.*, ¶¶77-78, 85; *id.*, ¶¶226, 230, 237 (Gableman, J., concurring).

¶23    The general rule is not to exclude testimony but, rather, "'shaky but admissible' experience-based medical expert testimony" may be challenged by cross-examination, presentation of contrary evidence, and instruction to the jury on the burden of proof. *Id.*, ¶86 (quoting *Daubert*, 509 U.S. at 597).

### *3. Analysis.*

¶24    Hodgson argues that the circuit court did not properly exercise its discretion in admitting Dr. Wojciehoski's testimony for the two following reasons:

(1)  Dr. Wojciehoski's testimony was unreliable, and inadmissible, because the testimony was based upon insufficient facts; and

(2)  Dr. Wojciehoski's testimony was inadmissible because it was not the product of reliable principles and methods.

¶25    We next address each of Hodgson's arguments.

*a. Dr. Wojciehoski's Testimony Was Supported by Sufficient Facts.*

¶26    Hodgson asserts that Dr. Wojciehoski did not have sufficient facts to give admissible testimony as to whether Zhu had conscious pain and suffering before or after the accident. We disagree.

¶27    We consider, first, Dr. Wojciehoski's testimony regarding facts he considered in coming to his opinion that Zhu suffered in the form of pre-accident fear and apprehension. Dr. Wojciehoski reviewed the 911 recording from Hodgson's call after the collision, the EMS file, paramedic records, the police

report about the accident, and 756 pages of Zhu's medical records. Dr. Wojciehoski opined that Zhu suffered pre-accident fear and apprehension because Zhu "saw [Hodgson's] car before it hit her." Dr. Wojciehoski based that opinion on, among other facts, the following: "it was a clear day, [Zhu] was on a bike path approaching a road," Zhu "had no evidence of impairment" and "wasn't blind," and Zhu "wasn't deaf, so she'd hear a car." Dr. Wojciehoski considered that Zhu was struck from the side (not from behind where she may not be aware of the car). Also, skid marks created by Hodgson's vehicle established that there was a period of time between when Hodgson braked and when his vehicle struck Zhu that Zhu would have heard the tires braking.

¶28 The facts described immediately above were sufficient for the circuit court to properly exercise its discretion and determine that Dr. Wojciehoski could reliably opine that Zhu was aware that she was about to be struck by Hodgson's vehicle and suffered in the form of pre-accident fear and apprehension.

¶29 We next turn to those facts that support Dr. Wojciehoski's testimony that Zhu suffered conscious pain and suffering after she was struck by Hodgson's car. To repeat, Dr. Wojciehoski testified that Zhu was likely conscious for thirty to sixty seconds after she was hit by Hodgson's vehicle, and during that time she felt pain and suffering. Dr. Wojciehoski based this opinion on facts that included the following:

- Zhu was conscious before the collision, and her injuries sustained in the collision do not establish that Zhu lost consciousness immediately when she was struck.

- After she was hit by Hodgson's car, Zhu was thrown approximately thirty feet through the air.

10

- Zhu suffered multiple injuries, including skull fractures, multiple fractures to her leg, a pneumothorax, multiple rib fractures, a cervical spine fracture, and a splenic laceration.

¶30 The facts set forth in the preceding paragraph were sufficient for the circuit court to reasonably exercise its discretion and determine that Dr. Wojciehoski could reliably opine that Zhu was conscious after she was struck by Hodgson's vehicle and that, during that period of consciousness, she felt pain and suffered.

¶31 Hodgson contends that Dr. Wojciehoski's testimony was inadmissible because he did not know if Zhu's head hit the hood of Hodgson's car or the pavement after the collision, and he did not know exactly how long Zhu was conscious after the accident. Those gaps in Dr. Wojciehoski's knowledge do not make his testimony inadmissible. Rather, those gaps go to the weight the jury may assign to the testimony and are properly explored on cross-examination of Dr. Wojciehoski. *See id.*, ¶86.

### b. Dr. Wojciehoski's Opinions were Based Upon, and Applied, Reliable Principles and Methods.

¶32 Hodgson argues that Dr. Wojciehoski's opinions were unreliable, and inadmissible, because the testimony was not based upon, and did not apply, reliable principles and methods. We disagree.

¶33 To summarize, Dr. Wojciehoski's opinions were based on his prior medical experience "[h]aving been in practice 30 years." Dr. Wojciehoski has treated patients with significant injuries like that which Zhu experienced, including pain treatment for persons who were "not speaking," but suffered

11

traumatic injuries. The only research relied upon by Dr. Wojciehoski in support of his opinions was "research completed by Dr. Richard Levey … an Air Force psychiatrist who studied aviation accidents." According to Dr. Wojciehoski, Dr. Levey is "well respected in the aviation community," has "opined … on military crashes," and "was an expert opining on some of the 9/11 issues of people … who were in the airplane and died as a result of that [crash]." Dr. Wojciehoski described Levy's research on pre-death fear as drawing from the experiences of pilots who were aware of mechanical failure prior to an impact. But, Dr. Wojciehoski was unable to cite to any specific publication by Dr. Levy that informed Dr. Wojciehoski's opinion.

¶34     Hodgson identifies three primary areas regarding Dr. Wojciehoski's testimony. First, Hodgson argues that Dr. Wojciehoski did not rely on peer-reviewed articles to support his opinions. Hodgson also asserts that Dr. Wojciehoski's testimony should have been excluded because his opinions cannot be objectively tested, and his methodology is not generally accepted in the medical community.

¶35     The determinative flaw in Hodgson's arguments is that those arguments fail to address the complex nature of the basis for expert medical opinions. Rather, Hodgson focuses entirely on factors identified in *Daubert* regarding peer-reviewed studies, objective testing and the like, and ignores the broad discretion that *Kumho Tire* makes clear that circuit courts have in determining the reliability of expert testimony. As one example, the Supreme Court in *Kumho Tire* held that the factors enunciated in *Daubert* may not be applicable to all types of expert testimony. *See Kumho Tire*, 526 U.S. at 150.

¶36 Moreover, medical testimony may be reliable if based on the experience of the medical practitioner. *See Seifert*, 372 Wis. 2d 525, ¶¶77-78, 85; *id.*, ¶¶226, 230, 237 (Gableman, J., concurring). In *Seifert*, our supreme court concluded that the reliability of expert testimony provided by physicians may be gauged by the physician's personal knowledge and experience alone. "[M]edicine is scientific, but not entirely a science." *Id.*, ¶79 (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)); *id.*, ¶230 (Gableman, J., concurring). Medicine is based on "specialized as distinguished from scientific knowledge." *Id.*, ¶78 (quoting *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 834 (9th Cir. 2004)). Medical testimony is reliable if there is a reasonable basis for it in the knowledge and experience of the expert. *See id.*, ¶81.

¶37 Indeed, there is no reason to expect, as Hodgson demands, that there would be peer-reviewed studies or objective testing of persons who have periods of pain and suffering from traumatic injuries before death. In the field of medicine, there are ethical and practical limitations which may mean that there is no medical literature, or objective studies, for every medical question that may be the subject of expert testimony. *See generally id.*, ¶¶79, 83-85; *id.*, ¶240 (Gableman, J., concurring). As the circuit court noted in its analysis of the admissibility of Dr. Wojciehoski's testimony, experience of a physician may be sufficiently reliable for the admission of medical expert testimony. *See id.*, ¶¶83-85; *id.*, ¶240 (Gableman, J., concurring). Dr. Wojciehoski reached his opinion based on his qualifications and experience, and took into account the individualized facts of the case.

¶38 Keeping in mind the broad leeway that is to be accorded to the circuit court on how to assess the reliability of expert opinion testimony, as well as

the court's final determination of reliability, we are satisfied that, on these facts, the circuit court did not err in admitting Dr. Wojciehoski's testimony.[9]

## B. The Circuit Court's Denial of Hodgson's Request to Read at Trial Dr. Wojciehoski's Cross-Examination Testimony at the *Daubert* Hearing.

¶39    Hodgson argues that the circuit court erroneously exercised its discretion in denying his request to read to the jury Dr. Wojciehoski's cross-examination testimony during the *Daubert* hearing that occurred outside the presence of the jury during the trial.  We begin by setting forth additional pertinent facts.

### 1. Additional Pertinent Facts.

¶40    At the *Daubert* hearing, Hodgson's counsel asked Dr. Wojciehoski if he was aware that Zhu had suffered from a detached retina in her left eye that caused permanent scarring in her left eye and led to a diagnosis of "choroidal neovascularization."  Counsel for Hodgson did not make any medical records available to Dr. Wojciehoski at the hearing regarding Zhu's alleged eye condition.  Dr. Wojciehoski testified that, without seeing any medical records regarding Zhu's visual acuity, he could not offer an opinion that she was "vision impaired" but, if she had been, "she wouldn't be riding a bicycle" and a diminishment in her vision acuity "doesn't really alter any of [his] prior opinions."

---

[9] In light of our decision that Dr. Wojciehoski's testimony was admissible under WIS. STAT. § 907.02(1), we need not, and do not, address the Estate's argument that admission of that testimony constitutes harmless error.  *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (explaining if a decision on one point disposes of the appeal, the court will not decide other issues raised).

¶41   Hodgson's counsel then asked Dr. Wojciehoski if he was aware that eight months before the accident Zhu fell off a bicycle and suffered a subarachnoid hemorrhage and was found unconscious on the pavement next to her bicycle.  Counsel for Hodgson did not make any medical records available to Dr. Wojciehoski at the hearing regarding the alleged fall.  Dr. Wojciehoski testified that he was not aware of any such accident but, if it happened, it "would have no effect" on his opinion.

¶42   Hodgson's counsel did not dispute at the ***Daubert*** hearing that, at the time of the discovery deposition, counsel had medical records concerning Zhu's purported eye condition and the alleged prior accident but did not ask Dr. Wojciehoski any questions relating to either at the discovery deposition.

¶43   At the conclusion of the ***Daubert*** hearing, Hodgson's counsel requested that the cross-examination of Dr. Wojciehoski be transcribed and added to Dr. Wojciehoski's deposition testimony that would be read to the jury.  The circuit court denied the request.  The court ruled that WIS. STAT. § 804.07(1)(c)2. authorizes the admission into evidence of the "deposition" of a "medical expert," but that statutory subpart does not authorize the admission of the cross-examination of Dr. Wojciehoski at the ***Daubert*** hearing because it is not a "deposition" under WIS. STAT. § 804.05.  In addition, the court determined that, at the time of Dr. Wojciehoski's deposition, Hodgson's counsel had knowledge of medical records about Zhu's purported eye condition and prior bike accident.  By asking Dr. Wojciehoski about those records at the ***Daubert*** hearing, but not at the discovery deposition, the Estate was unfairly prejudiced because the Estate did not have notice that counsel would question Dr. Wojciehoski about those issues at the ***Daubert*** hearing.

¶44    Dr. Wojciehoski stated at the *Daubert* hearing that, although he was not available to testify at trial the day the *Daubert* hearing was held, he was available to testify the following day, and the circuit court informed Hodgson that he could call Dr. Wojciehoski as a witness at trial. Hodgson did not do so.

## *2.  Standard of Review.*

¶45    We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard. *Giese*, 356 Wis. 2d 796, ¶16. We will not overturn a circuit court's discretionary decision if the decision "has a rational basis and was made in accordance with accepted legal standards in view of the facts in the record." *Id.*

## *3.  Analysis.*

¶46    On appeal, Hodgson argues that the circuit court's exclusion of Dr. Wojciehoski's *Daubert* hearing cross-examination testimony deprived him of a meaningful opportunity to cross-examine Dr. Wojciehoski. We agree with the circuit court that Hodgson had a meaningful opportunity to cross-examine Dr. Wojciehoski at the discovery deposition regarding Zhu's visual acuity and the purported bike accident described in her medical records, but Hodgson decided not to do so. That Hodgson decided to forego this opportunity does not mean that the circuit court erroneously exercised its discretion in its ruling.

¶47    Hodgson also asserts that he could not have called Dr. Wojciehoski as a witness at trial because he had not subpoenaed Dr. Wojciehoski to appear at trial or listed Dr. Wojciehoski as a defense witness. However, Hodgson does not point to anywhere in the record where he requested, but was denied, the opportunity to amend the defense witness list to add Dr. Wojciehoski as a witness.

16

Further, Hodgson also does not contend that he was unable for any reason to serve a subpoena on Dr. Wojciehoski to testify at trial. Hodgson's decision not to call Dr. Wojciehoski as a witness at trial was an intentional one and, again, that decision does not lead to the conclusion that the circuit court erroneously exercised its discretion in not allowing Hodgson to read Dr. Wojciehoski's cross-examination testimony from the *Daubert* hearing to the jury.[10]

¶48 Accordingly, the circuit court did not erroneously exercise its discretion by denying Hodgson's request to read to the jury at trial a transcript of Dr. Wojciehoski's cross-examination testimony at the *Daubert* hearing.

### C. Hodgson's Motions to Change Special Verdict Answers.

¶49 Hodgson contends that the circuit court erred in not granting his post-verdict motions to change the jury's answers to special verdict questions. We begin by setting forth our standard of review and the legal principles that direct our analysis.

---

[10] Hodgson also argues, briefly, that the cross-examination testimony of Dr. Wojciehoski was admissible under WIS. STAT. § 901.07 which provides: "When any part of a writing or statement, whether recorded or unrecorded, is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." This is commonly referred to as the "rule of completeness." *See State v. Briggs*, 214 Wis. 2d 281, 292, 571 N.W.2d 881 (Ct. App. 1997). We need not determine whether the rule of completeness applies in this circumstance because this argument was not made to the circuit court, the circuit court did not have the opportunity to consider the argument, and the argument was forfeited by Hodgson. The "forfeiture rule" requires that issues not preserved in the circuit court are deemed forfeited. *State v. Huebner*, 2000 WI 59, ¶11 and n.2, 235 Wis. 2d 486, 611 N.W.2d 727. "Raising issues at the [circuit] court level allows the [circuit] court to correct or avoid the alleged error … eliminating the need for appeal." *Id.*, ¶12. The rule also avoids "blindsid[ing]" circuit courts with reversals based on theories that did not originate in the circuit court. *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

*1. Standard of Review and Governing Legal Principles.*

¶50    A circuit court may change a jury's answer to a special verdict question if there is insufficient evidence to support the answer.  *See* WIS. STAT. § 805.14(5)(c) ("Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer.").  The sufficiency of the evidence test is set forth at § 805.14(1):

> No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

¶51    "[T]he credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment."  ***Best Price Plumbing, Inc. v. Erie Ins. Exch.***, 2012 WI 44, ¶43, 340 Wis. 2d 307, 814 N.W.2d 419 (quoted source omitted).  If more than one inference could be drawn from the evidence, we must accept the inference drawn by the jury.  ***Id.***  In reviewing a circuit court's decision on a request to change a jury's special verdict answer, we search for credible evidence to sustain the jury's verdict.  ***Id.***, ¶44.  "When there is *any* credible evidence to support a jury's verdict, even though it [is] contradicted and the contradictory evidence [is] stronger and more convincing, nevertheless the verdict must stand."  ***Id.*** (quoted source omitted).

¶52    Our review is "even more stringent because the circuit court approved the jury's verdict.  We afford special deference to a jury determination in those situations in which the [circuit] court approves the finding of a jury."  ***Morden v. Continental AG***, 2000 WI 51, ¶40, 235 Wis. 2d 325, 611 N.W.2d 659.  In those cases, we "will not overturn the jury's verdict unless 'there is such a

complete failure of proof that the verdict must be based on speculation.'" ***Id.*** (quoted source omitted).

¶53 We now address Hodgson's arguments regarding changes to special verdict answers.

### 2. *Zhu's Conscious Pain and Suffering.*

¶54 The jury was asked to answer the following special verdict question: "What sum of money will fairly and reasonably compensate plaintiffs with respect to: … Past pain, suffering, mental anguish, apprehension, discomfort or sorrow?" The jury answered: "$5,000,000." Hodgson contends that the circuit court erred in denying his request that the jury's answer be changed to "$0."

¶55 Hodgson concedes that Dr. Wojciehoski testified that Zhu experienced suffering in the form of pre-collision fear and apprehension and post-collision conscious pain and suffering from her injuries. However, Hodgson argues that Dr. Wojciehoski's testimony is not "credible evidence" for the same reasons that Hodgson contends that Dr. Wojciehoski's testimony was not "reliable" and admissible, as discussed earlier. From that, Hodgson asserts that, because the testimony of Dr. Wojciehoski is not credible, this case is analogous to ***Bowen v. Lumbermens Mutual Cas. Co.***, 183 Wis. 2d 627, 517 N.W.2d 432 (1994). In ***Bowen***, the decedent was fatally injured by a car while riding his bicycle, and his estate alleged a cause of action against the driver of the car for negligent infliction of emotional distress and fear suffered by the decedent immediately prior to the collision. ***Id.*** at 634-35, 661. Our supreme court concluded that the estate's claim failed because there was no credible evidence that "Bowen knew of the impending impact or suffered severe emotional distress in the moments before impact." ***Id.*** at 661-62.

¶56 We reject Hodgson's contention that the result is governed by *Bowen* because there is evidence to support the Estate's contention that Zhu experienced pain and suffering. Dr. Wojciehoski's opinion that Zhu experienced suffering in the form of pre-collision fear and apprehension and post-collision conscious pain and suffering from her injuries was admissible and, if believed by the jury, constituted credible evidence to support the jury's special verdict answer.

¶57 Next, Hodgson argues that the answer to this special verdict question must be changed because Dr. Wojciehoski's opinions directly contradict Hodgson's testimony that he did not observe any reaction from Zhu before the collision, and that he did not notice any signs of consciousness in Zhu sixty seconds after the collision occurred when Hodgson saw Zhu in the roadway. This court does not determine the credibility of witnesses and the weight to be accorded to Dr. Wojciehoski's testimony as compared to Hodgson's testimony. That was for the jury to determine. *See Best Price Plumbing*, 340 Wis. 2d 307, ¶43. We are satisfied that, although Dr. Wojciehoski's testimony conflicted with Hodgson's testimony, the jury could reasonably have found Dr. Wojciehoski's testimony more credible and accorded it more weight.

¶58 Accordingly, the circuit court did not err in denying Hodgson's request to change the jury's answer to the conscious pain and suffering question on the special verdict.

### 3. Zhu's Negligence.

¶59 The jury was asked the following special verdict question: "At or just before the collision in question, was Emilly Zhu negligent in the operation of the bicycle she was riding?" The jury's answer to this question was "[n]o," and Hodgson requested in his post-verdict motions that the circuit court change the

jury's answer to "yes." Hodgson argues that the circuit court erred in denying his request because "there is no credible evidence to support the jury's view that Zhu was *not* negligent." (Emphasis added.) Hodgson makes two primary arguments in support of his motion, and we next address each.

### a. Negligence Per Se.

¶60 Hodgson argues that the evidence established that Zhu was negligent per se under WIS. STAT. §§ 346.46 and 346.24(2).

¶61 WISCONSIN STAT. § 346.46(1) provides that "every operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection."[11] Section 346.46(2)(c) specifies how stops required by § 346.46(1) shall be made:

> [I]f the operator [of the bicycle] cannot efficiently observe traffic on the intersecting roadway from the stop made at the stop line or crosswalk, the operator shall, before entering the intersection, stop the [bicycle] at such point as will enable the operator to efficiently observe the traffic on the intersecting roadway.

Sec. 346.46(2)(c). A failure to stop as required by § 346.46(1) "constitutes negligence per se." *Totsky v. Riteway Bus Serv., Inc.*, 2000 WI 29, ¶¶24, 26, 233 Wis. 2d 371, 607 N.W.2d 637.

---

[11] "[V]ehicle" is defined as "every device … by which [a] person … may be transported … upon a highway." *See* WIS. STAT. §§ 346.01(1) and 340.01(74). The parties assume that a non-motorized bicycle is a "vehicle" within in the meaning of § 340.01(74) and for purposes of WIS. STAT. § 346.46. We will assume for purposes of this appeal, but do not decide as a matter of law, that the parties are correct on those points.

The parties assume that the stop sign facing the bike trial where Zhu was crossing Raymond Road is an "official stop sign" as mentioned in WIS. STAT. § 346.46. We will assume for purposes of this appeal, but do not decide as a matter of law, that the parties are correct on that point.

21

¶62    WISCONSIN STAT. § 346.24 relates to intersections or crosswalks not controlled by a "traffic control signal[]."[12]   It states in pertinent part:  "No … bicyclist … may suddenly leave … a curb or other place of safety and … ride into the path of a vehicle which is so close that it is difficult for the operator of the vehicle to yield."  Sec. 346.24(2).  This is a safety statute, and Hodgson contends that anyone who violates a safety statute can be found negligent as a matter of law.  *See Landrey v. United Servs. Auto. Ass'n*, 49 Wis. 2d 150, 154, 181 N.W.2d 407 (1970) (stating the violation of safety statutes "constitutes negligence as a matter of law").

¶63    The Estate asserts that Hodgson bore the burden of proving that Zhu failed to comply with WIS. STAT. §§ 346.46(2)(c) and 346.24(2).  Hodgson does not dispute the Estate's assertion that he bore that burden of proof.  *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted).  Accordingly, we take Hodgson as conceding that it was his burden to prove that Zhu did not comply with either or both of those statutes.  Thus, the question before us is whether there is any credible evidence from which the jury could have concluded that Hodgson did not prove that Zhu violated §§ 346.46(2)(c) or 346.24(2).  If there is any such credible evidence, we must affirm the circuit court's decision not to change the jury's verdict.  *See Best Price Plumbing*, 340 Wis. 2d 307, ¶44.

---

[12]  For purposes of that statute, WIS. STAT. § 340.01(69) defines "[t]raffic control signal" as "any device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed."

¶64 We now discuss the evidence that Hodgson asserts establishes that Zhu was negligent per se and evidence that rebuts Hodgson's position.

¶65 First, Hodgson relies on his own testimony that he did not observe Zhu stop her bicycle before leaving the bike path and crossing Raymond Road, and that she was "pedaling like you would if you were maintaining speed, not bearing down a bit on the pedals if you were going from a stop."

¶66 The jury was also given the following evidence which, if believed by the jury, rebuts that testimony from Hodgson. Hodgson testified at his discovery deposition that he did not observe Zhu until after she was already beyond the stop sign and, thus, had no first-hand knowledge as to whether Zhu did or did not stop at the stop sign. In addition, the Estate's accident reconstruction expert, Charles Scalia, testified that there is a knoll on Raymond Road approximately 200-300 feet to the east of the intersection of Raymond Road and the bike path. The jury heard from Thomas Patterson, who is familiar with the intersection. He testified that the knoll would have impeded Hodgson's view of the bike path until Hodgson's vehicle was over the knoll. Further, Scalia testified that, at a minimum, Hodgson's vehicle was traveling fifty-three miles per hour leading up to the collision. Scalia estimated that, at that rate of speed, Hodgson's vehicle would have been over the knoll where he could observe Zhu only three seconds or less before colliding with Zhu's bicycle.

¶67 Second, Hodgson points to testimony from Scalia that only 1.8 seconds passed between when Hodgson began braking and the time Zhu was struck by Hodgson's vehicle. However, Hodgson does not explain how this evidence shows that Zhu did not stop where she could "efficiently observe" traffic on Raymond Road in compliance with WIS. STAT. § 346.46(2)(c) or how this

evidence shows that Zhu's actions made it difficult for Hodgson to yield to Zhu under WIS. STAT. § 346.24(2). We reject Hodgson's contention on this basis because this court need not address insufficiently developed arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶68 Third, Hodgson relies on evidence that Zhu's bike was not in the lowest gear when her bike was recovered after the accident. But, Hodgson fails to explain how that evidence establishes that Zhu failed to comply with either of the relevant statutes. Accordingly, we reject this argument as insufficiently developed. *See id.*

¶69 Therefore, there is credible evidence from which the jury could conclude that Hodgson did not prove that Zhu violated either WIS. STAT. §§ 346.46(2)(c) or 346.24(2).

*b. The Emergency Doctrine.*

¶70 Hodgson argues that evidence heard by the jury established that Zhu must have been negligent because Zhu left the bike bath and entered Raymond Road "suddenly" and gave Hodgson only 1.8 seconds to react to stop his vehicle. Hodgson asserts that the short period of time he had to react before the collision constitutes a "sudden emergency" and that "a participant in an accident" like himself may be found to be not negligent if a sudden emergency caused the accident. This is commonly referred to as the "emergency doctrine." *See generally Hoeft v. Friedel*, 70 Wis. 2d 1022, 1030, 235 N.W.2d 918 (1975). Under the emergency doctrine, a person is relieved from liability for his or her action or non-action "when faced with an emergency which his [or her] conduct did not create or help to create." *Id.*

¶71    The Estate responds that Hodgson waived any argument relating to the emergency doctrine when Hodgson agreed at the jury instruction conference not to request an instruction on the emergency doctrine. Hodgson does not attempt to refute the Estate's waiver argument in his reply brief, and we take his silence as concession of the point. *See Schlieper*, 188 Wis. 2d at 322 (stating an argument asserted by the respondent and not disputed by the appellant's reply is taken as admitted).

¶72    In sum, we affirm the circuit court's decision not to change the jury's verdict answer regarding Zhu's negligence. *See Best Price Plumbing*, 340 Wis. 2d 307, ¶44.

## D.  Hodgson's Request For a New Trial.

¶73    Hodgson argues that the circuit court erred in instructing the jury: (1) regarding the law on right-of-way and the duties of bicyclists and drivers of motor vehicles; and (2) that the jury should presume, in light of her death, that Zhu was not negligent. Hodgson asserts that these purported errors were prejudicial and require a new trial on liability issues. We reject Hodgson's arguments for the following reasons.

### 1.  Right-of-Way and Duties of Bicyclists and Drivers of Motor Vehicles.

¶74    We begin by discussing our standard of review.

#### a.  Standard of Review.

¶75    Our standard of review of a circuit court's decision to give, or not give, a requested jury instruction has been stated as follows:

> "'A circuit court has broad discretion in deciding whether to give a requested jury instruction.'" We will not overturn a circuit court's decision to give or not give a requested jury instruction absent an erroneous exercise of discretion. "However, we independently review whether a jury instruction is an accurate statement of the law applicable to the facts of a given case." "'If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.'"

*State v. Anderson*, 2014 WI 93, ¶16, 357 Wis. 2d 337, 851 N.W.2d 760 (internal citations and quoted sources omitted).

¶76     This issues also requires us to interpret statutes. The interpretation of a statute is a question of law that we determine independently of the circuit court. *Pasko v. City of Milwaukee*, 2002 WI 33, ¶23, 252 Wis. 2d 1, 643 N.W.2d 72. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's intent is expressed in the statutory language." *Id.* Accordingly, "statutory interpretation 'begins with the language of the statute.'" *Id.*, ¶45 (quoted source omitted). "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.* (quoted source omitted). Our supreme court further notes:

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*Id.*, ¶46.

*b. Additional Pertinent Facts.*

¶77    Initially, we repeat some background for context.  Prior to the collision, Zhu was riding her bicycle on a bicycle path near where that trail intersects with Raymond Road.  Hodgson was traveling westbound on Raymond Road.  Where that bicycle path intersects with Raymond Road, there is a stop sign in place that directs traffic on the path to stop, and there is a marked crosswalk across Raymond Road for bicyclists and pedestrians.  As Zhu was crossing Raymond Road within the marked crosswalk, she was struck by Hodgson's vehicle.

¶78    Near the conclusion of the trial, the circuit court and counsel for the parties conferenced on the instructions the court would give the jury.  During the instruction conference, the circuit court informed all counsel that the court intended to read to the jury WIS JI—CIVIL 1255, which instructs on "right of way: pedestrian or bicyclist's duty at uncontrolled intersection or crosswalk; suddenly leaving curb or place of safety," and WIS JI—CIVIL 1165, which instructs on "right of way:  to pedestrian and uncontrolled intersection or crosswalk" with a slight modification.[13]  (Capitalization omitted.)

¶79    Counsel for Hodgson did not object at the conference to the circuit court reading either of these instructions to the jury.  Instead, counsel for Hodgson only "wonder[ed] if 1165 and 1255 are redundant to a certain extent, or they could be combined in some fashion."  "I think 1255 actually accomplishes everything

---

[13] "Right-of-way" refers to "the privilege of the immediate use of the roadway."  *See* WIS. STAT. § 340.01(51); *see also* WIS JI—CIVIL 1153, 1165, and 1255.

1165 does and more." The circuit court responded that it believed the instructions are "two separate instructions" and that the court would "keep them [both] in."[14]

¶80 We next detail those two instructions as given by the circuit court. WISCONSIN JI—CIVIL 1165, as modified by the court and read to the jury,[15] provides:

> The Wisconsin statutes define "right of way" as the privilege of the immediate use of the roadway.
>
> The statutes further provide that, at an intersection or crosswalk where traffic is not controlled by traffic control signals or by a traffic officer [neither of which apply in this case], the driver of a vehicle shall yield the right of way to a pedestrian or bicyclist who is crossing the roadway within a marked or unmarked crosswalk.
>
> A marked crosswalk is any portion of a roadway clearly indicated for pedestrian crossing by signs, lines, or other markings on the surface of the roadway.
>
> ….
>
> If you find that [Emilly Zhu] was crossing the roadway within a marked … crosswalk, then it became the duty of [Defendant Brian Hodgson] to yield the right of way to [Zhu].

¶81 WISCONSIN JI—CIVIL 1255, as modified by the court and read to the jury, provides:

> A safety statute provides that at an intersection or crosswalk where traffic is not controlled by traffic control

---

[14] Hodgson argues on appeal that he objected to WIS JI—CIVIL 1165 and 1255 at the conference. One citation to the record from Hodgson for that assertion shows that Hodgson did not object to those two jury instructions but, rather, asked that WIS JI—CIVIL 1153 be given in addition to those two instructions. Hodgson's other citation to the record for that assertion is not found in the record in this appeal.

[15] Modifications by the circuit court to the standard jury instruction language are shown in brackets.

signals or by a traffic officer [neither of which apply in this case], the driver of a vehicle shall yield the right of way to a pedestrian [or bicyclist] who is crossing the highway within a marked or unmarked crosswalk.

"Right of way" means the privilege of the immediate use of the roadway.

The statute further provides that a pedestrian [or bicyclist] shall not suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is difficult for the driver of the vehicle to yield the right of way.

If you find that [Emilly Zhu] suddenly left the [bike path] and [] the path of [Defendant's Brian Hodgson's] vehicle which was so close that it was difficult for [him] to yield, then [Defendant Brian Hodgson] did not have a duty to yield the right of way; but if you find that [Emilly Zhu] did not so enter the roadway, then it became the duty of [Defendant Brian Hodgson] to yield the right of way to [Emilly Zhu].

¶82    At the jury instruction conference, the circuit court also informed counsel that it would not, as requested by Hodgson, read to the jury WIS JI—CIVIL 1153, which instructs on "right of way:  at intersection with through highway."  (Capitalization omitted.)   WISCONSIN JI—CIVIL 1153 provides as follows:

A safety statute provides that the driver of a vehicle shall stop before entering a through highway *and shall yield the right of way to other vehicles which have entered or are approaching the intersection upon the through highway.*

The statutes define "right of way" as the privilege of the immediate use of the roadway.

The highway on which [Brian Hodgson] was driving was, at the time of the collision, a "through highway" as defined by the statute.

An automobile on a through highway is approaching an intersection when it is so close to the intersection that, considering the rate of speed at which it is traveling, it would be reasonable to assume that a collision

29

would occur if the automobile which stopped, as required, before entry onto the through highway moves onto the highway and into the path of the oncoming vehicle.

If you find that the oncoming automobile on the through highway had entered the intersection, or was approaching it as here defined, it then became the duty of the driver entering the through highway to yield the right of way to the automobile on the through highway.[16]

(Emphasis added.)

¶83 In rejecting Hodgson's request to give that instruction, the circuit court stated that "Zhu was required to stop at the stop sign, and then once she entered the intersection in the crosswalk then the … specific rules regarding pedestrians at [an] uncontrolled intersection or crosswalk apply, which are [WIS JI—CIVIL] 1165 and 1255." Counsel for Hodgson objected to the exclusion of WIS JI—CIVIL 1153. He argued that Raymond Road was designated a through highway by both a City of Madison ordinance and Wisconsin statute, and that all vehicles must yield to traffic on Raymond Road before entering that roadway.

### c. Analysis.

¶84 Before proceeding with our analysis, we clarify a mischaracterization in Hodgson's argument on appeal and the specific issue before this court.

¶85 In his brief-in-chief, Hodgson broadly argues that the circuit court "erred as a matter of law in instructing the jury that Zhu had the right-of-way." (Capitalization omitted.) Hodgson's description of his argument mischaracterizes

---

[16] The sole modification requested to the standard WIS JI—CIVIL 1153 by Hodgson is noted in brackets. The form of this instruction proposed to the court by Hodgson did not remove the word "automobile" and substitute with the word "bicycle" at any point in the instruction.

the circuit court's instructions. Together, WIS JI—CIVIL 1165 and 1255 informed the jury of the circumstances that required Hodgson to yield the right-of-way to Zhu and the circumstances that required Zhu to yield the right-of-way to Hodgson. The circuit court did not, as Hodgson asserts, instruct the jury that, as a matter of law, Zhu had the right-of-way at the time of the collision.

¶86    Next, as discussed, Hodgson did not object at the conference to the circuit court reading to the jury WIS JI—CIVIL 1165 and 1255. Hodgson has thus waived or forfeited any alleged error by the court in giving those two instructions. *See* WIS. STAT. § 805.13(3) ("Failure to object at the [instruction] conference [to the proposed instructions] constitutes a waiver of any error in the proposed instructions.").

¶87    Therefore, Hodgson's argument on appeal can only be that, in addition to giving WIS JI—CIVIL 1165 and 1255, the circuit court erred by not also reading to the jury WIS JI—CIVIL 1153. With that clarified, we now proceed with our analysis.

¶88    To repeat, WIS JI—CIVIL 1165 instructs the jury that at an intersection or crosswalk, such as this one, where traffic is not controlled by traffic control signals or by a traffic officer, the driver of a motor vehicle shall yield the right-of-way to a bicyclist who is crossing the roadway within a marked crosswalk. *See id.*; *see also* WIS. STAT. § 346.24(1). WISCONSIN JI—CIVIL 1255 instructs the jury that in the same situation, the driver of a motor vehicle shall yield the right-of-way to a bicyclist who is crossing the highway within a marked or unmarked crosswalk, but if the bicyclist suddenly leaves the curb or other place of safety and the path of the oncoming motor vehicle is so close to the bicyclist that it is difficult for the motor vehicle driver to yield the right-of-way, the driver

does not have a duty to yield the right-of-way. *See id.*; *see also* § 346.24(2). In contrast, WIS JI—CIVIL 1153 informs the jury that, under Wisconsin law, a vehicle entering a "through highway" from an intersecting roadway "shall yield the right of way" to vehicles that are approaching the intersection upon the through highway. *See id.*; *see also* WIS. STAT. § 346.18(3).[17]

¶89     Hodgson argues that the right-of-way standard set forth in WIS. STAT. § 346.18(3) and WIS JI—CIVIL 1153 applies in this case because Raymond Road is classified by Madison ordinance as a through highway and the bike path is controlled by a stop sign. *See* MADISON GEN. ORD. 12.53(68) and 12.50. Hodgson asserts the circuit court should have given the jury the instruction on the right-of-way rule in § 346.18(3), WIS JI—CIVIL 1153, because that instruction "can be read harmoniously" with the right-of-way rules set forth in WIS. STAT. § 346.24(1) and (2) and their accompanying jury instructions, WIS JI—CIVIL 1165 and 1255. However, Hodgson does not explain why this is true. We conclude that the right-of-way rules in § 346.18(3) and § 346.24(1) and (2) are incongruous, and giving WIS JI—CIVIL 1153 in addition to WIS JI—CIVIL 1165 and 1255 would have confused the jury.

¶90     Under WIS JI—CIVIL 1165 and 1255, Hodgson was required to yield the right-of-way to Zhu unless Zhu entered Raymond Road so suddenly that Hodgson had difficulty yielding the right-of-way. However, under WIS JI—CIVIL 1153, Zhu was required to yield the right-of-way to Hodgson under *all* circumstances. The right-of-way standards in each instruction cannot all apply in

---

[17] WISCONSIN STAT. § 346.18(3) provides: "The operator of a vehicle shall stop as required by [WIS. STAT. §] 346.46(2)(a), (b) or (c) before entering a through highway, and shall yield the right-of-way to other vehicles which have entered or are approaching the intersection upon the through highway."

this case.  It would have been erroneous for the circuit court to instruct the jury on the right-of-way rules in each of those three jury instructions.  The jury would have been confused by the addition of WIS JI—CIVIL 1153 to the instructions.

¶91     We could end our analysis at this point because we have identified a sufficient basis to affirm the circuit court's ruling. However, for purposes of completeness, we agree with the circuit court that there was another basis for the court to refuse to read to the jury WIS JI—CIVIL 1153.

¶92     As recognized by the circuit court, our decision on this point is guided by *Chernetski v. American Family Mutual Insurance Co.*, 183 Wis. 2d 68, 515 N.W.2d 283 (Ct. App. 1994).  Similar to this case, *Chernetski* concerned a collision between a motor vehicle and a bicyclist at a roadway intersection, and at issue was which of two apparently conflicting right-of-way rules applied. *Chernetski*, 183 Wis. 2d at 71, 73.  We now discuss *Chernetski*.

¶93     In WIS. STAT. § 346.02(4)(a), the legislature has provided that, as a general rule, "every person riding a bicycle upon a roadway … is subject to all the duties which [WIS. STAT. ch. 346] grants or applies to the operator of a vehicle, except those provisions which by their express terms apply only to motor vehicles or which by their very nature would have no application to bicycles." *See Chernetski*, 183 Wis. 2d at 73.[18]  This court explained that, in view of the general

_____

[18] In *Chernetski v. American Family Mutual Insurance Co.*, 183 Wis. 2d 68, 515 N.W.2d 283 (Ct. App. 1994), this court analyzed WIS. STAT. § 346.02(4)(a) (1991-92).  *See Chernetski*, 183 Wis. 2d at 75 n.2.  That version of § 346.02(4)(a) provided in relevant part: "every person riding a bicycle upon a roadway … is subject to all duties which [WIS. STAT. ch. 346] grants or applies to the operator of a vehicle, except those provisions which by their express terms apply only to motor vehicles or *which* by their very nature would have no application to bicycles."  *See* § 346.02(4)(a) (1991-92) (emphasis added).  The emphasized word "which" in the 1991-92 version of the statute has since been changed to the word "that."  *See* § 346.02(4)(a) (2017-18).  The change makes no material difference to our analysis.

33

rule stated in § 346.02(4)(a), unless another statute has "some 'special provision[] applicable to bicycles,'" the issue of whether the car or the bicycle had the right of way would be governed by the requirements of WIS. STAT. § 346.18. *Chernetski*, 183 Wis. 2d at 73. We repeat § 346.18(3) for context: "The operator of a vehicle shall stop as required by [WIS. STAT. §] 346.46(2)(a), (b) or (c) before entering a through highway, and shall yield the right-of-way to other vehicles which have entered or are approaching the intersection upon the through highway." As noted, Hodgson argues on appeal that WIS JI—CIVIL 1153, the instruction regarding § 346.18(3), should have been read to the jury.

¶94 The plaintiffs argued in *Chernetski*, as the Estate does here, that WIS. STAT. §§ 346.23-346.25 are such "'special provision[s]' [applicable to bicycles] which trump[] the general rule" regarding the duties set forth in WIS. STAT. ch. 346. *Chernetski*, 183 Wis. 2d at 76. As a reminder, the court gave WIS JI—CIVIL 1165 and 1255. WISCONSIN STAT. § 326.24(1) and (2) are the bases for WIS JI—CIVIL 1165 and 1255 which state in this context that Hodgson was required to yield the right-of-way to Zhu unless Zhu entered Raymond Road so suddenly that Hodgson had difficulty yielding the right-of-way.

¶95 As a result, in *Chernetski* and in this case, there are two sets of competing statutes regarding the duties of the motor vehicle driver and the bicyclist to yield the right-of-way at the intersection. This court concluded that, when WIS. STAT. §§ 346.02(4)(a), 346.18, and 346.23-346.25 are read together, an ambiguity is created because § 346.23-346.25 can plausibly be read with two different meanings. *Chernetski*, 183 Wis. 2d at 74-75, 77. In light of this ambiguity, we examined the scope, context and history of the relevant statutes. *See id.* at 74-75. Having done so, the court concluded the following about apparently competing provisions of WIS. STAT. ch. 346:

> To the contrary, rather than taking away rights of a bicyclist operating upon a roadway, the legislature explicitly gave to bicyclists operating upon sidewalks and *in crosswalks* the same rules of right-of-way that had previously applied only to pedestrians.
>
> When read as a whole, we conclude that the legislature … intended to create statutes applicable to two different types of bicyclists—one that chooses to use the roadway, as would any other vehicle, and another that chooses to act as a pedestrian by riding upon sidewalks and *within crosswalks*. The rules of the road, including rules of right-of-way, may differ depending upon the capacity in which the bicyclist chooses to operate. Namely, the statute at issue in this case, [WIS. STAT.] § 346.25 … as well as [WIS. STAT.] §§ 346.23-24 … were intended by the legislature to be applicable to bicyclists acting in a "pedestrian-like" capacity.
>
> In contrast, as provided by [WIS. STAT.] § 346.02(4)(a), … where a bicyclist operates upon a roadway, as would a motor vehicle, the rules governing the rights and duties of a vehicle are applicable to the bicyclist. Of course this general rule is "subject to special provisions applicable to bicycles," but only provisions intended to be applicable to bicycles operating upon a roadway.

*Chernetski*, 183 Wis. 2d at 76-77 (emphasis added and emphasis in original removed).

¶96 On appeal, Hodgson argues that WIS. STAT. §§ 346.02(4)(a) and 346.18 apply, and WIS JI—CIVIL 1153 should have been read to the jury. Hodgson asserts that Zhu was riding her bike on a bike path that has a stop sign directing traffic on the path to stop before crossing the intersecting roadway. Also, Zhu was on her way to work at the time of the collision. From those uncontested premises, Hodgson contends that it follows that Zhu was "operating her bicycle on a roadway as a vehicle, not on the sidewalk as a pedestrian." But, Hodgson gives us only his conclusion and does not explain why his argument is correct.

¶97    Rather, the record establishes that Zhu was riding her bicycle not on a roadway, but on a bike path for pedestrians and bicyclists, and was in a marked crosswalk for pedestrians and bicyclists who were on the path.  At the time of the collision, Zhu was operating her bicycle within a marked crosswalk in a "'pedestrian-like' capacity." *See Chernetski*, 183 Wis. 2d at 77.  Accordingly, we conclude that, under the particular circumstances here, the right-of-way rule in WIS. STAT. § 346.24(1) and (2) governs as the Estate contends and not the right-of-way rule in WIS. STAT. § 346.18(3) as Hodgson asserts.  *See Chernetski*, 183 Wis. 2d at 77.

¶98    Therefore, the circuit court did not err in denying Hodgson's request to read to the jury WIS JI—CIVIL 1153.

### *2.  The Circuit Court's Instruction that the Jury Should Presume that Zhu Was Not Negligent.*

¶99    Hodgson argues that the circuit court erred by reading to the jury WIS JI—CIVIL 353.  That instruction tells the jury that it must begin with the presumption that a decedent was not negligent because the decedent cannot testify at trial, but that the presumption may be overcome:

> Because Emilly Zhu has died and cannot testify, you must presume that Emilly Zhu was not negligent at and before the time of the occurrence, unless you find the presumption is overcome by other evidence.
>
> In deciding whether Emilly Zhu was negligent, you must weigh the presumption with all the other evidence. Unless you are satisfied by the greater weight of the credible evidence, to a reasonable certainty, that it is more likely that Emilly Zhu was negligent, you must find that Emilly Zhu was not negligent.

¶100 Hodgson asserts that WIS JI—CIVIL 353 "only states what judges and lawyers know is obvious: a party is not negligent unless there is evidence indicating he or she is negligent" and that pointing the presumption out to the jury "only served to confuse them by implying that Hodgson needed to prove something more against Zhu." We reject Hodgson's argument for two reasons.

¶101 First, while Hodgson may be correct that judges and lawyers might know that a party such as Zhu is not negligent unless evidence establishes negligence, Hodgson gives us no reason to assume that this knowledge is uniform among laypersons. We are not persuaded by Hodgson's conclusory assertions that the instruction "undoubtedly" confused the jury.

¶102 Second, in his reply brief, Hodgson asserts that the instruction does not correctly state the law. In support, Hodgson points out that at least four states have eliminated the presumption that, in a wrongful death action, the decedent is presumed to have acted with due care when comparative negligence is at issue. However, Wisconsin is not one of the states that has repudiated the presumption and, to the extent that Hodgson is asking this court to change the law, it is not this court's place to do so. *See **Wells v. Dairyland Mut. Ins. Co.***, 274 Wis. 505, 510, 80 N.W.2d 380 (1957) (recognizing the presumption) and ***Cook v. Cook***, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (explaining that only the supreme court is vested with the power to "overrule, modify or withdraw language from a previous supreme court case.") Thus, the presumption remains the law of this state.

¶103 The circuit court did not err in reading WIS JI—CIVIL 353 to the jury.

### E. Hodgson is Not Entitled to a New Trial in the Interest of Justice.

¶104 Hodgson argues that he is entitled to a new trial in the interest of justice. The reasons put forth by Hodgson replicate his arguments which we have addressed and rejected above. Accordingly, we conclude that justice does not require a new trial in this case. *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("Adding [rejected arguments] together adds nothing. Zero plus zero equals zero.").[19]

### II. The Estate's Cross-Appeal.

¶105 The Estate cross-appeals issues related exclusively to IDS, Hodgson's liability insurer. The Estate argues that the entire judgment amount imposed by the circuit court solely against Hodgson should have been imposed jointly and severally against both IDS and Hodgson because IDS did not satisfy its burden of proving the policy limits of Hodgson's automobile liability policy with IDS. For the following reasons, we reject the Estate's arguments.

### A. Standard of Review and Governing Case Law.

¶106 In *Price v. Hart*, 166 Wis. 2d 182, 480 N.W.2d 249 (Ct. App. 1991), we summarized the law on this subject matter and a circuit court's decision to receive an insurance policy in evidence post-verdict:

> [T]he supreme court has made it clear that if an insurer pleads that its policy is limited as to the amount of coverage but does not prove those specific limits prior to

---

[19] The Estate cross-appeals against Hodgson and requests that, if we grant a new trial for Hodgson, we should consider his challenges to various evidentiary rulings made by the circuit court. Because we have not granted Hodgson's request for a new trial, we need not reach the Estate's remaining arguments about evidence that the Estate contends should be admitted if a new trial is granted.

> verdict, the [circuit] court has discretion to allow this proof after verdict and to enter judgment in the amount of those limits. However, it is also clear that if an insurer does not plead or prove its policy limits prior to verdict or motions on the verdict, the [circuit] court must enter judgment in the amount of the verdict.

*Id.* at 190.

¶107 This issue also requires us to interpret an insurance policy.

> Insurance contract interpretation presents a question of law that is reviewed de novo. *Danbeck v. Am[erican]. Fam[.] Mut. Ins. Co.*, 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150; *Smith v. Atl[antic]. Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990). The same rules of construction that govern general contracts are applied to the language in insurance policies. *Kremers–Urban Co. v. Am[erican]. Emp[s]. Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy. *Danbeck*, 245 Wis. 2d 186, ¶10 ….

> Therefore, the first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed coverage issue. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶51, 255 Wis. 2d 61, 647 N.W.2d 223. Insurance policy language is ambiguous "if it is susceptible to more than one reasonable interpretation." *Danbeck*, 245 Wis. 2d 186, ¶10 …. If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law. *Id.*; *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 637, 586 N.W.2d 863 (1998).

*Folkman v. Quamme*, 2003 WI 116, ¶¶12-13, 264 Wis. 2d 617, 665 N.W.2d 857.

### B. Additional Pertinent Facts.

¶108 We now set forth additional facts pertinent to IDS's proof of its policy limits.

- IDS alleged in its answer that "[t]he policy was subject to terms and conditions some of which limit the coverages provided. This includes a limitation of $100,000 per person and $300,000 per accident for bodily injury claims."

- The entire IDS policy at issue was produced to the Estate by IDS during discovery.

- At the final pretrial conference, without objection from the Estate, the circuit court accepted into evidence the affidavit of an IDS underwriting supervisor who attested that, attached to her affidavit, was a "true and exact copy" of a portion of Hodgson's auto liability policy "which indicates the coverage and limits effective [at the time of the accident]." Attached to the affidavit was the "Renewal Declaration" which specified coverage limitations of "$100,000 each person" and "$300,000 each accident." (Capitalization omitted.)

- Also at the final pretrial conference, immediately after the court accepted that exhibit, defense counsel stated: "The policy limits are $100,000 per person. I don't think there is any dispute about that," and then asked counsel for the Estate if counsel "agree[ed]." Counsel for the Estate replied: "Correct."

¶109 Following the jury's verdict, the Estate filed a proposed order for judgment in the amount of $5,486.506.48, plus interest and costs, jointly and severally against both Hodgson and IDS. Counsel for IDS objected to the Estate's proposed judgment and requested that judgment against IDS be entered in the amount of $100,000 pursuant to the IDS policy limits. In response, counsel for the

Estate argued in a letter to the court that, although the circuit court had received by stipulation a declarations page[20] showing policy limits, IDS had not proffered to the court at the time of the stipulation the entire insurance policy and "[n]o insurance policy was ever admitted *or stipulated to*." (Emphasis added.)

¶110 A hearing was held on the Estate's proposed judgment. At the hearing, counsel for the Estate contended that the declarations page from the policy, alone, was not sufficient to prove the IDS's policy limits because "whether or not the limits of [$100,000 per person] would apply would be dependent on the actual policy, which is not in evidence." At the hearing, the circuit court received into evidence the entire IDS policy. The court found that the Estate was not prejudiced by the court doing so because the policy was exchanged during discovery and, as a result, the Estate had notice of the terms of the IDS policy.

¶111 After reviewing the relevant language in the policy, the circuit court determined that IDS's policy limits applicable to this case were limited to $100,000 as the Estate previously stipulated. Judgment was then entered by the circuit court against IDS in the amount of $108,268.70, which included partial costs and interest.

¶112 After the circuit entered judgment against IDS in the amount of $108,268.70, IDS tendered the full amount of that judgment to the Estate. The Estate refused to agree to a satisfaction of judgment based on that tender. IDS filed a motion requesting an order for satisfaction of judgment, which the Estate opposed. A hearing was held on IDS's motion. The circuit court found that IDS

---

[20] In counsel's letter to the circuit court, counsel referred to the declaration page attached to the affidavit submitted to the court as a "certification page." This discrepancy makes no material difference to our analysis.

tendered payment of the $108,268.70 amount and entered an order that the Estate's judgment against IDS was fully satisfied.

## C. Analysis.

¶113   The Estate argues that the circuit court erred in admitting the IDS policy into evidence and concluding that the $108,268.70 amount tendered by IDS to the Estate paid the full extent of the IDS policy limits.  We reject the Estate's baseless arguments for four reasons.

¶114   First, the Estate entered into an explicit stipulation on the record in court that there is no dispute that the policy limits for the IDS policy are $100,000 per person.  *See* WIS. STAT. § 807.05.[21]  Counsel for the Estate did not qualify that stipulation by stating that his agreement was only that the declarations page said that the policy limits were $100,000 per person.  Counsel for the Estate did not qualify that there was any question about the policy limits based on the language in the policy.  Rather, there was an unqualified stipulation that the policy limits in this IDS policy were $100,000 per person.  Further, the Estate did not request to withdraw the stipulation in the circuit court and does not request to do so now.  For those reasons, that stipulation binds the Estate, and IDS proved its policy limits prior to verdict.  *See* **Price**, 166 Wis. 2d at 190.  This conclusion, alone, is sufficient to reject Hodgson's arguments on this issue.

---

[21] WISCONSIN STAT. § 807.05 reads:

> **Stipulations.** No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding conducted under [WIS. STAT. §§] 807.13 or 967.08 and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

¶115   Second, because IDS in its answer pleaded that its policy limited the amount of coverage, the circuit court had the discretion to allow proof of the policy limits after the jury's verdict.  *See id.*  Here, the circuit court exercised that discretion by allowing IDS to submit proof of the entire policy after the jury's verdict, and there is no basis to conclude that the circuit court erroneously exercised its discretion in doing so.

¶116   Third, the Estate asserts that the circuit court's admission of the IDS policy was erroneous because the proof of the policy limits offered by IDS was inadmissible hearsay.  However, the Estate did not raise a hearsay objection to the admission of the policy at the pertinent hearing.  We reject that contention because "[a]rguments raised for the first time on appeal are generally deemed forfeited" and may be rejected on that basis.  *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (quoted source omitted).

¶117   To the extent that the Estate argues that it preserved for appeal a hearsay objection to the admission of the policy limit evidence submitted by IDS at the post-verdict hearing, we reject the Estate's argument.  The Estate asserts that, at trial, it "objected to the receipt of any evidence after closing."  More specifically, during a discussion between the circuit court and counsel for the parties regarding closing arguments, counsel for the Estate stated:  "I am reserving the right to object if I see something that I don't think should be in [the defense's closing]."  "I was objecting to [defense counsel] trying to admit anything into evidence after closing."

¶118   In order to preserve the right to appeal on a question of the admissibility of evidence, a party must apprise the circuit court of the specific grounds upon which the objection is based.  *See State v. Peters*, 166 Wis. 2d 168,

174, 479 N.W.2d 198 (Ct. App. 1991). General objections which do not indicate the grounds for admissibly are not sufficient to preserve the objector's right to appeal. *See id.* To be sufficiently specific, an objection must reasonably advise the circuit court of the basis for the objection. *See id.* The Estate's non-specific objection to "anything" defense counsel might attempt to admit after closing arguments is not sufficiently specific to have advised the circuit court that the Estate challenged the admissibility of the affidavit and attached policy submitted by IDS on hearsay grounds. Accordingly, we conclude that the Estate has forfeited that argument. *See **Hunt***, 358 Wis. 2d 379, ¶32.

¶119 Fourth, the circuit court determined that, in reviewing the policy language applicable to this case, the policy limit was $100,000, and we agree. The Estate argues that the IDS policy language was ambiguous. In an attempt to establish ambiguity, the Estate tries to take one sentence out of context. That one sentence does not state that the liability policy limits on the declarations page apply to payments IDS is required to make pursuant to the terms of the policy. That one sentence, taken out of context by the Estate, does not establish ambiguity on this point. The IDS policy is replete with clear statements and understandable language that the policy requires IDS to pay for bodily injury liability caused by an insured, and IDS's payments will not exceed the maximum liability for that damage shown on the declarations page. As a result, we conclude that the Estate's argument regarding the policy limits contradicts the express terms of the insurance policy and for that reason we reject that contention. *See **Folkman***, 264 Wis. 2d 617, ¶¶12-13.

¶120 In sum, we reject the Estate's arguments and affirm the circuit court's order.

### III.  IDS's Motion for Fees and Costs.

¶121   During this appeal, IDS filed a motion requesting payment of its fees and costs incurred regarding the Estate's cross-appeal just discussed.  IDS argues that the Estate's cross-appeal of the circuit court's order of satisfaction is frivolous.

¶122   For the reasons noted in the previous section of this opinion, we agree with IDS that the Estate's entire cross-appeal against IDS is frivolous.  *See* WIS. STAT. RULE 809.25(3).  We conclude that the Estate's attorneys knew, or should have known, that the cross-appeal against IDS was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.  Therefore, we remand this matter to the circuit court for a determination of reasonable appellate attorney fees and costs for IDS regarding the Estate's cross-appeal against IDS.  We emphasize that the award of costs and attorney fees shall be against the Estate's attorneys only.

### CONCLUSION

¶123   For the foregoing reasons, the judgment and order of the circuit court are affirmed and the cause is remanded with directions.

*By the* Court.—Judgment and order affirmed and cause remanded with directions.

Not recommended for publication in the official reports.